**RIO GRANDE LTD. PARTNERSHIP d/b/a Lora Lee Apartments and Beltway Management Company, Appellants,**

v.

**Arthur Frank MACKECHNEY, George Burrows, and Vesta Tarpley, Appellees.**

**No. 01–87–0635–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

June 30, 1988.

John R. Guest, Mattingly & March, Houston, for appellants.

Gene S. Hagood, Brown, Todd, Hagwood & Davenport, Alvin, for appellees.

Before JACK SMITH, DUNN and COHEN, JJ.

## OPINION

COHEN, Justice.

A jury awarded the appellees damages against the appellants for personal injuries received when their apartment ceilings collapsed during a rainstorm. The apartments were owned and/or managed by the appellants. Appellants contend that there was factually insufficient evidence to support the jury's findings on damages. In a cross-point of error, appellees contend that the trial judge erred by ordering a remittitur.

The jury's verdict, the trial judge's remittitur, and the amounts of the final judgments rendered are as follows:

| VESTA TARPLEY | JURY VERDICT | REMITTITUR | JUDGMENT |
| --- | --- | --- | --- |
| Future physical pain and mental anguish | $ 20,000 | $ 6,000 | $ 14,000 |
| Future physical impairment | $ 10,000 | $ 2,000 | $ 8,000 |
| Past physical pain and mental anguish | $ 10,000 | – | $ 10,000 |
| Past physical impairment | $ 5,000 | – | $ 5,000 |
| | $ 45,000 | $ 8,000 | $ 37,000 |
| **GEORGE BURROWS** | **JURY VERDICT** | **REMITTITUR** | **JUDGMENT** |
| Future physical pain and mental anguish | $ 5,000 | $ 1,000 | $ 4,000 |
| Future physical impairment | $ 5,000 | $ 1,000 | $ 4,000 |
| Past physical impairment | $ 2,500 | – | $ 2,500 |

| GEORGE BURROWS | JURY VERDICT | REMITTITUR | JUDGMENT |
| --- | --- | --- | --- |
| Past physical pain and mental anguish | $ 5,000 | – | $ 5,000 |
| | $ 17,500 | $ 2,000 | $ 15,000 |

| ARTHUR MacKECHNEY | JURY VERDICT | REMITTITUR | JUDGMENT |
| --- | --- | --- | --- |
| Future physical pain and mental anguish | $ 25,000 | $ 5,000 | $ 20,000 |
| Future physical impairment | $ 50,000 | $15,000 | $ 35,000 |
| Past physical impairment | $ 10,000 | – | $ 10,000 |
| Past lost earnings | $ 30,000 | $ – | $ 30,000 |
| Future lost earnings | $ 10,000 | $ – | $ 10,000 |
| Past physical pain and mental suffering | $ 5,000 | $ – | $ 5,000 |
| | $130,000 | $ 20,000 | $110,000 |

In determining "factual sufficiency," we must consider and weigh all the evidence, both that supporting and that contrary to the challenged findings. The findings must be upheld unless the evidence is so weak that the verdict is manifestly erroneous or unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *M.J. Sheridan & Son Co. v. Seminole Pipeline Co.*, 731 S.W.2d 620, 623 (Tex.App.—Houston [1st Dist.] 1987, no writ).

■ The first point of error challenges the evidence supporting the award of damages to Vesta Tarpley. Tarpley's physical suffering included neck and shoulder pain, which decreased within several months and had disappeared by the time of trial. She also suffered headaches from the time of the accident, December 21, 1983, through trial in March, 1987. Moreover, Tarpley suffered from "shock" at the time of the accident, and later from nervousness, apprehension, and fear. Tarpley was physically impaired in that she could no longer safely lift more than five pounds. Thus, she could not vacuum or do heavy cleaning, as she did before the accident. Tarpley had cared for her seven-year-old nephew and had done the housework for her brother, appellee Arthur Mackechney, before the accident. Afterwards, she had to hire out these duties. This caused Tarpley further mental suffering, as she had taken pride in being a "hard worker" and a "doer." Appellants offered no evidence controverting Tarpley's evidence.

Tarpley first saw a doctor two weeks after the accident, when she was treated three times within eight days. She had no medical treatment thereafter for these injuries. Her total medical bills were $415.

Tarpley was 61 years old when injured and was 65 years old at trial, with a life expectancy of 18.5 years. She had attended junior college and done temporary clerical and bookkeeping work. She had had no prior problems with her neck and shoulder area. She had cared for her mother when she was bedridden for 2½ years, and for her husband when he was bedridden for four years. She had moved in with appellee Mackechney, her brother, to help him and his seven-year-old son, of whom he had custody after a divorce.

The jury found total damages of $45,000. Appellants cite no case law holding similar findings excessive. Although each case is unique, several decisions indicate that the evidence supporting the jury's verdict was sufficient. *Compare Grogan v. Santos*, 617 S.W.2d 312 (Tex.Civ.App.—Tyler 1981, no writ); *Roberts v. Tatum*, 575 S.W.2d 138 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Appellants have shown no reversible error.

Point of error one is overruled.

■ Appellants next challenge the evidence to support the award of damages to George Burrows.

The uncontroverted testimony of Mr. Burrows was the only evidence on his damages. It reflects that Burrows was struck across the back and shoulders by falling

sheet rock. As a result, he suffers pain in the neck and shoulders, numbness in his left arm from the shoulder to the elbow, a tingling sensation in the fingers of his left hand, and a loss of mobility in his neck. Consequently, Burrows cannot do any heavy housework, and must hire someone to help with household chores.

Burrows was 61 years old at the time of trial, with a life expectancy of 16.8 years. Four years elapsed from the accident until the trial. His total medical bills were $458. He had serious back injuries in 1972 and 1975, and had not worked since 1975. Before that, he served for 31 years in the merchant marine. Since then, he had been listed as "totally and permanently disabled." He testified that his prior injuries were to his lower back, whereas the present ones were to his neck and shoulders. As evidence that he was in good condition before the accident, Burrows testified that he had spent 31 days in 1980 walking and touring "the Holy Land" with his church.

After the accident, Burrows took prescription drugs that relieved pain, but caused diarrhea for several months. He was told by his chiropractor that the numbness under his arm pit would continue for three to five years after the accident. He stopped going to the doctor when his injuries stabilized, ceasing to get better or worse.

Burrows ceased bowling after the accident. Acts such as mopping floors, cleaning bathrooms and tubs, and changing bed linens were often painful.

Appellants point to no authorities indicating that the jury's findings were excessive. Reversible error has not been shown.

Appellant's second point of error is overruled.

■ Appellants next challenge the evidence concerning the damages to Arthur Mackechney.

Mackechney's previous back and neck injuries were aggravated by the present accident. He now suffers lower back and neck pain, which is worsened by activity. He has numbness in his left foot, and de-

creased sensation in his left hand, accompanied by muscle spasms and a decreased range of motion. He now has difficulty sleeping through the night. Due to hip and back pain caused by the accident, he is now unable to work at his former occupation as an ironworker.

Mackechney's total medical bills were $385. He first went to a doctor two weeks after the accident and was treated two times. Both his and Tarpley's delay in seeing a doctor was due to their regular doctor being out of town.

Mackechney was 64 years old at trial, with a life expectancy of 14.8 years. He had been a union ironworker since 1942. From 1978 through 1982, he had earned approximately $14,000 to $18,000 per year. His earnings in 1983 fell to $2,300, while he went through a divorce that left him with custody of a young son. He attributed the earnings decline to the traumatic divorce, while appellees presented evidence that little work was available for ironworkers in the area after 1982.

Mackechney's doctor recommended surgery for his hip and back, but he declined because there was no one to care for his son. The doctor predicted a need for future surgery. Mackechney was cleared for light duty work and returned to work, but pain made him quit. He could not climb stairs as before. He has ceased hunting and fishing. He now uses a cane constantly. For pain relief, he uses DMSO, a horse liniment.

Medical records confirmed the complaints and showed that Mackechney had sought a medical appointment on the date of the accident. His doctor gave him a 50/50 or 60/40 chance of walking normally again.

Mackechney testified that he had intended to work until age 65, and that as the oldest worker in his union, work was available to him. Based on his undisputed earnings history, the jury verdicts of $30,000 for three years of past lost earnings and $10,000 for future lost earnings were supported by sufficient evidence.

The jury verdicts of $10,000 and $5,000 for past physical impairment and past

physical pain and mental suffering were supported by sufficient evidence.

Finally, the jury verdicts of $25,000 for future pain and mental anguish and $50,000 for future physical impairments were based on sufficient evidence.

The third point of error is overruled.

Appellees have brought a cross-point of error contending that the trial court erred in ordering remittiturs for damages found by the jury.

The standard for review when a trial court orders a remittitur is that set out in *Larson v. Cactus Utility Co.*, 730 S.W.2d 640 (Tex.1987):

[A] court of appeals, in ordering a remittitur, should do so on an insufficiency of the evidence, and not an abuse of discretion, standard. Today we reaffirm that principle as it applies to trial courts. Trial courts and courts of appeals should be subject to the same standard for a simple reason: no court is free to substitute its judgment for that of the jury. *A court of appeals should uphold a trial court remittitur only when the evidence is factually insufficient to support the verdict ...*

To review trial court remittiturs under a different standard and continue the "abuse of discretion" test conflicts with a system that allows juries to set damages. The abuse of discretion standard robs of its vitality the constitutionally mandated right of trial by jury. Under an abuse of discretion review, so long as a reduction does not rise to a level shocking the court of appeals' conscience, the trial judge can freely reduce jury awards. (citations omitted.) Such review effectively allows jurists' determinations to be substituted for those of the jury, a practice condemned since (1849) ... Additionally, employing different standards leads to the inconsistent result permitting trial court remittiturs to stand when the same orders would have been improper coming from a court of appeals.

The statement of law in *Flanigan v. Carswell* ... is correct so far as it recognizes that the same rule for remittiturs applies to both courts of appeals and to trial courts. However, that case is overruled to the extent that it advocates a standard for (appellate review of) remittiturs varying from that (which governs the trial court initially).

730 S.W.2d at 641.

■ Before *Flanigan v. Carswell*, 159 Tex. 598, 324 S.W.2d 835 (1959), was overruled, the controlling issue for appellate review of a trial court remittitur was not whether the trial judge correctly determined that the evidence was insufficient to support the jury verdict, but whether the trial judge abused his discretion. Now, the standard for appellate review of a trial judge's remittitur is more strict. Remittiturs after *Larson* will not be upheld on appeal unless the appeals court agrees with the trial court's implicit finding that the evidence was insufficient to support the jury's verdict. This new standard of appellate review is important here because *Flanigan v. Carswell* would guide us to uphold the trial judge's remittitur, whereas *Larson v. Cactus Utility Co.* would cause us to reinstate the jury verdicts.

The trial judge here ordered remittiturs ranging from 20% to 30% of the particular elements of damages. The evidence in this record supports both the amount of damages found by the jury and that found by the trial judge in his order of remittitur. The remittitur does not shock our conscience. However, to uphold the remittitur would, as *Larson* declared, allow a judge's verdict to be substituted for a jury's. Therefore, we sustain the cross-point of error and reform the judgment so as to reinstate the jury's verdicts.

The order of remittitur is set aside. The judgment is reformed to reflect that judgment was rendered in favor of Vesta Tarpley for $20,000 for future physical pain and mental anguish, and $10,000 for future physical impairment, which along with other awards represents a total judgment for Vesta Tarpley of $45,000. The judgment is further reformed to reflect that judgment was rendered in favor of George Burrows for $5,000 for future physical pain and mental anguish and $5,000 for future physical impairment, which along with other

**820**

awards reflected in the judgment constitutes a total judgment of $17,500. The judgment is further reformed to reflect that judgment was rendered in favor of Arthur Mackechney for $25,000 for future physical pain and mental anguish, and $50,000 for future physical impairment, which along with the other awards constitutes a total judgment of $130,000. As so reformed, the judgment is affirmed.