Cyril J. SMITH, Jr., et al., Appellants,

v.

Barbara Smith CHRISTLEY, et al., Appellees.

No. B14–87–00113–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 21, 1988.

Rehearing Denied in Part July 21, 1988.

Mark D. Wilson, Houston, Andrew J. Mytelka, Frederick Black, Galveston, for appellants.

Ben H. Schleider, Jr., John A. Buckley, Jr., Houston, for appellees.

Before PAUL PRESSLER, DRAUGHN and ELLIS, JJ.

## OPINION ON MOTION FOR REHEARING

PAUL PRESSLER, Justice.

The opinion of May 12, 1988 is withdrawn, and this opinion is substituted in its place.

Two appeals from the probate court are here under consideration. Cyril Smith, Jr. appeals from the part of the judgment in favor of his sister, Barbara Smith Christley. Leasing Associates and James R. Foutch appeal from that part of the judgment in their favor against Cyril Smith, Jr. which granted less relief than they sought.

Martha Reeve Smith left all her property to her husband, Cyril Smith, Sr. He disclaimed his interest in her estate and it passed to their two children, Cyril Smith, Jr. and Barbara Smith Christley. Cyril Smith, Sr. granted his son a durable power of attorney to facilitate management of the family's affairs. Ultimately Cyril Smith, Sr.'s mental condition deteriorated and he lost competency. Appellant Cyril Smith, Jr. was engaged in his own business ventures, some of which required substantial financial backing. Appellant Cyril Smith, Jr.'s now defunct corporation, Ware–Con, took out vehicle and equipment leases from appellant Leasing Associates. Appellant Leasing Associates demanded guarantees from Cyril Smith, Sr. on the leases. Ware–Con eventually failed and the lease payments came into default.

Appellee Barbara Smith Christley sued all appellants and several other parties for various sums which she claimed belonged to her individually or as personal representative of her parents' estates. The court granted judgment for her against appellant Cyril Smith, Jr. for over one million dollars and judgment for appellant Leasing Associates against Ware–Con and a third party for $225,000. Leasing Associates recovered $5,900 from Cyril Smith, Jr. which was far less than it sought.

### Cyril Smith's Jr.'s Appeal

In points of error one, two, seven, and eight, appellant Cyril Smith, Jr. challenges the legal and factual sufficiency of

the evidence to support the jury's answers to some of the special issues. Point of error three criticizes the definition of fraud in the charge. Point of error nine claims that appellee received a multiple recovery. These points of error are overruled because Cyril Smith, Jr. waived his objections to the charge.

Appellant Cyril Smith, Jr. objected to the charge at length. He objected to the submission of special issues 1–10, 14, 15, and 31–33 on the grounds that there was no evidence, or in the alternative, insufficient evidence. Buried within these standard objections was an objection to the definition of fraud and an objection to double recovery. He thus violated TEX.R.CIV.P. 274, which reads in part:

> Where the objection made by the complaining party, or an instruction, issue, definition, or explanatory instruction requested by him, is in the opinion of the appellate court obscured or concealed by voluminous unfounded objections, minute differentiations or numerous unnecessary requests, such objection or request shall be untenable.

Appellant violated the rule in two respects. First, his objections were too profuse. *See Monsanto Co. v. Milam*, 494 S.W.2d 534, 536 (Tex.1973); *Mahan Volkswagen, Inc. v. Hall*, 648 S.W.2d 324, 330–31 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.) ("laundry list" contravenes rule 274); 3 R. McDONALD, TEXAS CIVIL PRACTICE § 12.29.2. *But cf. Baker Material Handling Corp. v. Cummings*, 692 S.W.2d 142, 145–46 (Tex.App.—Dallas 1985, writ dism'd by agr.) (mere number alone does not violate rule 274). Second, he filled the record with spurious objections which could never have been sustained. The fifteen objections to submission of issues on *factual* insufficiency grounds were utterly unfounded, because

> factual insufficiency of the evidence to support an affirmative answer to an opponent's issue furnishes no basis for refusal to submit the issue. *Strauss v. La Mark*, 366 S.W.2d 555 (Tex.1963); *Imperial Insurance Co. v. Ellington*, 498 S.W.2d 368 (Tex.Civ.App.—San Antonio 1973, no writ).

*Clarostat Mfg., Inc. v. Alcor Aviation, Inc.*, 544 S.W.2d 788, 791 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.). In *Clarostat* the appellant made stock objections to the submission of eleven special issues. The appellate court refused to consider any of the appellant's objections to the charge because rule 274 had been violated. For the same reasons, we overrule Cyril Smith, Jr.'s points of error one through three, and seven through nine.

■ It should be noted that the 1988 amendments to rule 279 did not authorize objection to the submission of an issue on the grounds of factual insufficiency. Until its amendment, the last sentence of rule 279 read in part:

> A claim that the evidence was insufficient to warrant the submission of any issue may be made for the first time after verdict....

The amended version provides:

> A claim that the evidence was legally *or factually* insufficient to warrant the submission of any question may be made for the first time after verdict....

(Emphasis added). Despite the clear language of the new rule, its legislative history demonstrates unambiguously that no change was intended. The Supreme Court Advisory Committee held the following discussion before recommending the amendment:

> JUDGE TUNKS: I'm not sure I understood what change he made.
> CHAIRMAN SOULES: All right, Judge. As Hadley was saying, in the past, raising insufficiency of the evidence—
> JUDGE TUNKS: Factual insufficiency.
> CHAIRMAN SOULES:—was done after verdict—either factual or legal insufficiency.
> For example, even though you can object to the submission of an issue based on legally insufficient evidence—there is no evidence to support it—even if you did not do so after verdict, you could move for a Judgment N.O.V. because there was no evidence to support it. So you could actually raise that after verdict even though it was not raised before.

JUDGE TUNKS: But you can't ask for —what bothers me is this terminology here. It appears to state—to infer that a basis—that an objection to an issue because there is factual insufficiency is sufficient to keep it from being submitted. That is not correct.

CHAIRMAN SOULES: That's correct. You—there's no question that you properly stated the law there.

JUDGE TUNKS: The fact that this language suggests that to me might also suggest it to somebody else. The claim that the evidence is factually insufficient may be made after the submission to the jury.

PROFESSOR EDGAR: Well, that's a correct statement of the law because that's the only time it can be made.

JUDGE TUNKS: That's right. But it infers that factual insufficiency could be made before the case is submitted to the jury.

CHAIRMAN SOULES: Of course, it cannot do so.

PROFESSOR EDGAR: I don't read that—

JUDGE TUNKS: I think probably Hadley corrected it. I just didn't understand him clear enough. I think you took out the word "factually" here; did you not?

PROFESSOR EDGAR: No, you see, the rule as it now reads just says, "a claim that the evidence was insufficient to warrant the submission may be made for the first time after verdict."

JUDGE TUNKS: Yes, sir.

PROFESSOR EDGAR: And people have, from time to time, said, "Well, does that mean legally insufficient evidence or factually insufficient evidence?" Well, actually it means both, and that's what we've said.

JUDGE TUNKS: Well, you cannot possibly file an objection to the submission of an issue on the grounds that the evidence was factually insufficient to sustain it— to void or submit it.

PROFESSOR EDGAR: Does this indicate that you can?

JUDGE TUNKS: I think it does. It did to me.

PROFESSOR EDGAR: Well, that's not our intention.

JUDGE TUNKS: Well, that's all right.

PROFESSOR EDGAR: And certainly that was not—

JUDGE TUNKS: I just wanted to clear that up in my own mind.

CHAIRMAN SOULES: All right, any further discussion on final paragraph of Rule 279?

Okay. Those in favor of recommending the Supreme Court adopt this final paragraph, show by hands. Opposed? That's unanimously recommended.

TEXAS SUPREME COURT ADVISORY COMMITTEE MEETING, MINUTES at 5–8 (Sept. 13, 1986). One commentator criticized the proposed change even before it was approved by the Supreme Court:

The addition of "or factually" is unfortunate, and will contribute to confusion, and perhaps, lead some into making spurious objections. As observed, one can complain that there is no evidence to warrant submission, but *not* that there is factually insufficient evidence to do so. The trial court *must* submit, even though the answer will be against the great weight and preponderance of the evidence or supported by factually insufficient evidence. This being true, *objections* to submission on those bases are meritless, and may contribute to a charge of "numerous, unfounded" objections.

It is most unfortunate, therefore, that the new rule itself now suggests that such objections have merit, but *may* be made for the first time after verdict ...

Muldrow, *Objections to the Charge*, in STATE BAR OF TEXAS, ADVANCED APPELLATE ADVOCACY D–14 (Oct. 1987) (citations omitted) (emphases in original).

In points of error four through six, Cyril Smith, Jr. contends that attorneys fees should not have been awarded to appellee. He argues that appellee's attorney was improperly allowed to testify about the fees, because he was not listed as an expert witness in response to interrogatories. *See* Tex.R.Civ.P. 166b. The interrogatory in

question was propounded by a third party which eventually settled, and appellant Cyril Smith, Jr. never asked for a list of experts.

■ A party must be able to rely on the interrogatories and answers of other parties in the same suit. Otherwise a multiparty case would require redundant interrogatories with identical questions and answers. Rule 168 already limits the number of interrogatories. Although rule 168(2) limits interrogatories to use *against* the answering party, there is no such limit on who may use them. *Cf.* Fed.R.Civ.P. 33(b) (answers may be used to the full extent permitted by the rules of evidence).

■ Since appellee's attorney did not disclose his prospective testimony in response to the interrogatory, he should not have been allowed to testify. *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297 (Tex.1986). Good cause was not shown for allowing the testimony. There was therefore no evidence of the reasonableness of the legal fees. *See GATX Tank Erection Corp. v. Tesoro Petroleum Corp.*, 693 S.W.2d 617 (Tex.App. —San Antonio 1985, writ ref'd n.r.e.).

Appellant Cyril Smith, Jr. preserved his no evidence point by assigning it in his motion for instructed verdict. *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex.1985).

This objection was not buried in the objections to the court's charge. There was objection only to the submission of issues on *appellate* legal fees which appellee should recover for collection on a promissory note (special issue 19(a)(2, 3)). Thus the penalty for violating rule 274 does not prevent him from raising this complaint on appeal. Points of error four through six are therefore overruled only as to special issue 19(a)(2, 3), and they are sustained in all other respects.

■ The tenth point of error argues that since no fraud was found as to the Martha Smith Estate, the trial court improperly awarded damages to that estate. Appellant Cyril Smith, Jr. notes that the only fraud found was as to Cyril Smith, Sr.

The pertinent special issues appear below:

### SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that Cyril J. Smith, Jr. acted fraudulently as defined hereinafter with respect to Cyril J. Smith, Sr. as to the hereinafter described transactions:

|  | Yes | No |
|---|---|---|
| Funds withdrawn from the Estate of Martha Reeve Smith, Deceased. | Yes | ___ |
| Funds withdrawn from the Estate of Cyril J. Smith, Sr. Deceased. | Yes | ___ |

\* \* \* \* \* \*

If you have answered Special Issue Number 7 "yes" as to any item and only in that event, then answer Special Issue Number 8.

### SPECIAL ISSUE NO. 8

With respect to the fraudulent conduct which you have found was committed in response to Special Issue Number 7, do you find from a preponderance of the evidence that such conduct was the proximate cause of damage to the Estates of Cyril J. Smith, Sr and/or Martha Reeve Smith?

ANSWER: "We Do" or "We Do Not" to each of the following:

|  | "We do" | "We do Not" |
|---|---|---|
| Funds withdrawn from the Estate of Martha Reeve Smith, Deceased. | We do | ___ |
| Funds withdrawn from the Estate of Cyril J. Smith, Sr., Deceased. | We do | ___ |

\* \* \* \* \* \*

If you have answered Special Issue Number 8 "We do", as to any item and only in that event, then answer Special Issue Number 9.

### SPECIAL ISSUE NO. 9

State the amount of damages that you find from a preponderance of the evidence that the Estates of Cyril J. Smith, Sr. and/or Martha Reeve Smith suffered as a result of the fraudulent conduct

which you found was committed in response to Special Issue Number 8.

ANSWER, in Dollars and Cents, if any:

Funds withdrawn from the Estate of Martha Reeve Smith, Deceased. $231,288.00

Funds withdrawn from the Estate of Cyril J. Smith, Sr., Deceased. $156,510.00

\*   \*   \*   \*   \*   \*

Appellant Cyril Smith, Jr. points out the omission of any question concerning fraud as to the Martha Smith Estate in Special Issue 7. He contrasts that issue with the issues concerning proximate cause and damages. Both of the latter issues speak of "the Estates of Cyril Smith, Sr. and/or Martha Reeve Smith." He argues that the verdict does not support the award of $231,288.

This complaint comes too late. Any omission in the charge should have been addressed before the charge was presented to the jury. Appellant has waived a jury trial on the omitted issue. A finding is therefore implied in support of the judgment. TEX.R.CIV.P. 279. The tenth point of error is overruled.

### Leasing Associates' and James R. Foutch's Appeal

Appellants Leasing Associates and James R. Foutch assert, in their first point of error, that the trial court misallocated peremptory challenges among the parties. The court gave six strikes to appellee, three to appellant Cyril Smith, Jr., and three to appellants Leasing Associates and James R. Foutch. (The jury comprised six members, not twelve, because the trial was held in probate court). Counsel for Leasing Associates and James R. Foutch asked the court to give nine strikes to appellee, six to Cyril Smith, Jr., and six to Leasing Associates and James R. Foutch. The judge replied that he always gave the same number to plaintiffs and defendants.

■■■ The trial judge's formula does not comply with TEX.R.CIV.P. 233. The term "equalize" in the rule does not refer to exact numerical equality. If that were the test, rule 233 would say so. On the contrary, the precise purpose of the rule is to compensate for unfairness which would re-

sult from applying a numerical formula. However, no error has been preserved because appellants have not shown that the jury panel contained members which they would have struck. *See Baker Marine Corp. v. Herrera*, 704 S.W.2d 58, 60–61 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Speer v. Continental Oil Co.*, 586 S.W.2d 193, 195 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.). Point of error one is overruled.

Points of error two through six and point of error ten relate to the enforceability of three documents which purport to bind Cyril Smith, Sr. He actually signed only the document which was a deed of trust in favor of Leasing Associates. His son executed the two guaranty contracts by signing his father's name to them. The jury found that Cyril Smith, Sr. lacked mental capacity to execute the deed of trust and that when Cyril Smith, Jr. signed the two guaranty contracts, he did so apart from the power of attorney and without his father's permission. Finally, the jury found that Cyril Smith, Sr. never received consideration for any of the three transactions.

The tenth point of error attacks the finding of insufficient mental capacity. The testimony was conflicting. A rational finder of fact could have found insufficient mental capacity. Point of error ten is overruled.

■■■ The fifth and six points of error assert that Cyril Smith, Jr. was acting with his father's permission and under his power of attorney. The question is one of intent, as evidenced by the instruments and by the circumstances. *Cf. Republic Nat'l Bank of Dallas v. Fredericks*, 155 Tex. 79, 283 S.W.2d 39 (1955); *Hill v. Conrad*, 91 Tex. 341, 43 S.W. 789 (1897); Annot., 16 A.L.R.3d 951 (1967). We must detail the relevant evidence. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986). The sole purpose of the three transactions was to provide security for Cyril Smith, Jr.'s business commitments. Indeed, Leasing Associates was unwilling to provide further support to Cyril Smith, Jr. without such security. The jury found that Leasing Associ-

ates relied on Cyril Smith, Jr.'s representations and that Leasing Associates would not otherwise have entered the guaranty agreements. Leasing Associates even had a copy of the power of attorney in their files. It is inconceivable that Cyril Smith, Jr. would execute the documents in his father's name and not intend to bind his father. The jury's findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. Points of error five and six are sustained.

■ The second and fourth points of error challenge the sufficiency of the evidence to support the jury's negative answers to special issue No. 18. That issue inquired whether Cyril Smith, Sr. received consideration for entering into each of the three agreements. It is undisputed that consideration did flow to the son, as nothing was paid or given directly to Cyril Smith, Sr.

The consideration to Cyril Smith, Jr. is imputed to his father. "To support a contract of suretyship it is not necessary that any consideration pass directly to the surety. A consideration moving to the principal, alone, will support the suretyship." *Bonner Oil Co. v. Gaines,* 108 Tex. 232, 235, 191 S.W. 552, 553 (1917); *accord Whitten v. Alling & Cory Co.,* 526 S.W.2d 245, 248 (Tex.Civ.App.—Tyler 1975, writ ref'd). Therefore the fact of consideration was proven as a matter of law. The sole remaining issue is whether the three transactions were effective.

■ The two guaranty contracts were unquestionably effective. Cyril Smith, Jr. had a power of attorney from his father. Execution of the two instruments was within the scope of the agency as defined by the grant of power. Thus that execution was effective, regardless of whether it may have been tortious.

■ The deed of trust was signed by Cyril Smith, Sr. at a time when he lacked sufficient mental capacity. Even so, the obligation is enforceable against him because of the acts of his agent. The RESTATEMENT (SECOND) OF CONTRACTS (1981) provides:

§ 15. Mental illness or Defect

(1) A person incurs only voidable contractual duties by entering into a transaction if by reason of mental illness or defect

   (a) he is unable to understand in a reasonable manner the nature and consequence of the transaction, or

   (b) he is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition.

(2) Where the contract is made on fair terms and the other party is without knowledge of the mental illness or defect, the power of avoidance under Subsection (1) terminates to the extent that the contract has been so performed in whole or in part or the circumstances have so changed that avoidance would be unjust. In such a case a court may grant relief as justice requires.

The drafters of § 15 had in mind the current scenario when they wrote comment f:

   f. When avoidance is inequitable. If the contract is made on fair terms and the other party has no reason to know of the incompetency, performance in whole or in part may so change the situation that the parties cannot be restored to their previous positions or may otherwise render avoidance inequitable. The contract then ceases to be voidable. Where the other party, though acting in good faith, had reason to know of the incompetency at the time of contracting or performance, or where the equities can be partially adjusted by the decree, the court may grant or deny relief as the situation requires. Factors to be taken into account in such cases include not only benefits conferred and received on both sides but also the extent to which avoidance will benefit the incompetent and the extent to which others who will benefit from avoidance had opportunities to prevent the situation from arising.

Illustrations:

   5. A, an incompetent ... not under guardianship, mortgages land on fair terms to B, a bank which has no knowledge or reason to know of the incompe-

tency, for a loan of $2,000. At A's request the money is paid to ... C, who absconds with it. The contract is not voidable.

\* \* \* \* \* \*

The agreement was made on fair terms. Leasing Associates had no reason to know of the incompetency. Indeed, they still argue vigorously that Cyril Smith, Sr. was not incompetent at all. If they had had reason to know of such incompetency, it is unimaginable that they would have accepted the signature of Cyril Smith, Sr. instead of that of his son. The deed of trust was essentially ratified, although true "ratification" was impossible because of the lack of capacity. Cyril Smith, Sr. is now estopped to deny ratification. *See* RESTATEMENT (SECOND) OF AGENCY § 103 (1958). He incurred an obligation because of the conduct of his attorney in fact. We sustain the second point of error. The third point of error complains of the wording of the issue, and the fourth point of error raises a factual sufficiency challenge. Because the second point of error is sustained, it is unnecessary to address the third or fourth points of error.

■ The twelfth and thirteenth points of error attack the jury's refusal to find that Leasing Associates properly declared the leases in default. Leasing Associates gave written notice of default by certified mail. The notice letter tracked the provisions of the leases. The evidence established that proper notice was given as a matter of law. *Cf. Cielo Dorado Dev., Inc. v. Certainteed Corp.*, 744 S.W.2d 10 (Tex. 1988) (bare conclusory statement of having sent proper notice letter held sufficient to support an implied finding). The thirteenth point of error is sustained. It is unnecessary to address point of error twelve, which raises a challenge on the great weight and preponderance of the evidence. (Because of misnumbering, there is no eleventh point of error).

■ Points of error seven through nine complain of the inadequacy of the damages awarded to Leasing Associates against Cyril Smith, Jr.

As shown above, Leasing Associates agreed to lease a vehicle and some heavy equipment to Ware–Con, provided that Cyril Smith, Jr. procured his father's backing. Leasing Associates ultimately repossessed the items but could not resell them for their full value. The jury, however, refused to find Leasing Associates deficient in their efforts to recoup the loss. The jury also found that Leasing Associates justifiably and reasonably relied on Cyril Smith, Jr.'s representations. Finally, the jury found that Leasing Associates would not have made the lease agreements but for those representations.

The jury awarded $225,000 in damages because of Ware–Con's default. However, the jury found only $5,900 in damages to Leasing Associates caused by Cyril Smith, Jr.'s signing of his father's name.

The award of $5,900 against Cyril Smith, Jr. is manifestly in conflict with the larger award against Ware–Con. There is no way to reconcile the disparity. Point of error seven is sustained. We need not reach points of error eight and nine.

The judgment is reversed and the cause remanded for new trial on the following matters:

(1) whether Cyril Smith, Jr. acted with his father's permission and under the power of attorney; and

(2) whether Leasing Associates properly declared the leases in default and a determination of the damages caused by that default.

Appellee shall take nothing in her action to declare the deed of trust and lease agreements invalid. This rendition of judgment should not be construed to grant Leasing Associates affirmative relief on those instruments, however, since they had not sought such. *See Matz v. Storey*, 542 S.W.2d 116 (Tex.1976); *Commack v. George*, 377 S.W.2d 687, 690–91 (Tex.Civ.App.— Beaumont 1964, writ ref'd n.r.e.). The judgment is otherwise AFFIRMED.