**TRI–STATE MOTOR TRANSIT CO. and
Maye Lukinoff, Appellants,**

**v.**

**Kenneth NICAR, Kristie Folsom, and
Daniel Miller, Appellees.**

**No. B14–87–00911–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 12, 1989.

OPINION

ELLIS, Justice.

Tri–State Motor Transit Co. appeals a judgment in favor of three persons injured when its eighteen wheel tractor-trailer was involved in a collision. We affirm.

Tri–State's truck first collided with a pickup truck driven by Kenneth Nicar and then crashed into Daniel Miller's car which was stopped for a red light at the same intersection. Kristie Folsom was a passenger in Miller's car. All three appellees sustained injuries of varying severity. Nicar suffered neurological injuries which resulted in permanent disability. The jury awarded him a total of $868,500 in damages. Kristie Folsom suffered, among other things, severe facial injuries which have resulted in permanent scarring. The jury awarded Folsom a total of $432,700 in damages. Daniel Miller was awarded $57,400 in damages. He suffered neck, back and chest injuries among others and experiences continuing pain and physical limitations. Tri–State raises twelve points of error, grouping them according to the awards in favor of each appellee. We will consider them accordingly.

In challenging the judgment for Nicar, Tri–State complains that the trial court erred in allowing the testimony of an expert witness who had not been identified by Nicar in answers to interrogatories and abused its discretion in excluding the testimony of Tri–State's unidentified expert whose identity had not been requested by Nicar. In points of error three and four Tri–State challenges the legal and factual sufficiency of the evidence to support the jury's finding of loss of past earnings by Nicar.

Keith A. Glover, Dallas, Norman Snyder, Houston, for appellants.

Gail Johns, Mark G. Cypert, Kenneth T. Fibich, Rhonda R. Chandler, Gene E. Putnam, Houston, for appellees.

Before PAUL PRESSLER, DRAUGHN and ELLIS, JJ.

■ Tri–State's first point of error claims that the trial court erred in allowing the testimony of Dr. Tessa Hart, a neuropsychologist, who had not been identified by Nicar in answers to Tri–State's interrogatories. The proper standard of review by this court is set out in *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297 (Tex.1986):

Tex.R.Civ.P. 166b(5) placed a duty on H.E.B. to supplement its answer.... Under Tex.R.Civ.P. 215(5), failure to supplement results in the loss of the opportunity to offer the witness' testimony. The sanction is automatic. The exception is when good cause is shown why the testimony should be allowed in spite of the discovery sanction. Determination of good cause is within the sound discretion of the trial court. That determination can only be set aside if that discretion was abused.

To determine if there is an abuse of discretion, we must look to see if the court acted without reference to any guiding rules and principles. 714 S.W.2d at 297–298.

Relying on the *Morrow* line of cases, Tri–State says that the trial court had no discretion to allow Dr. Hart's testimony and its exclusion should have been automatic. Tri–State also insists that the record must affirmatively reflect a finding of good cause by the court to support admission of the testimony. *Walsh v. Mullane,* 725 S.W.2d 263 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

In answers to Tri–State's interrogatories, filed by Nicar on April 26, 1985, Nicar did not designate as experts Dr. Hart or Dr. Mary Ellen Hayden, with whose clinic Dr. Hart is associated. In fact, the record indicates that Nicar was not seen by Dr. Hayden until August of 1985. On June 5, 1986, in answers to interrogatories sent by plaintiff Kristie Folsom, Nicar did name Dr. Hayden as a person having knowledge of facts relevant to the suit and as an expert who might be called at trial. In accordance with the rules, copies of these sworn answers were served on all parties to the suit, including Tri–State. Tri–State deposed Dr. Kopaniky, a treating physician named by Nicar, who discussed Dr. Hayden's report in his deposition testimony, but Tri–State did not request to depose Dr. Hayden.

The case, which was by now five years old, was preferentially set number one on the court's docket for June 8, 1987. Dr. Hayden was prepared to testify at that time. However, counsel for Tri–State was in trial in another case and, as a result of his schedule, her testimony was delayed. Because of that delay and her long-standing commitment to attend her son's graduation in Delaware, Dr. Hayden was unavailable to testify. Nicar was forced to call Hayden's associate, Dr. Hart, in her place. With this information before it, the trial court ruled that Dr. Hart's position was that of "second runner" to Dr. Hayden and that her testimony would be admitted. He did offer Tri–State an opportunity to depose her first, which they did. Dr. Hart therefore testified by deposition. Her testimony was based on Dr. Hayden's report and also included her own impressions and conclusions.

In *Smith v. Christley,* 755 S.W.2d 525 (Tex.App.—Houston [14th Dist.] 1988, writ denied) this court addressed the reverse of this situation when one party, in objecting to the proffered testimony of an expert for the other party, asserted the failure of the other party to list the expert in response to an interrogatory which had been propounded by a third party. The objecting party had not, himself, requested the names of any anticipated expert witnesses. The offering party challenged the right of the objecting party to rely on its failure to respond to the third party's interrogatory. In holding that the objecting party's objection was valid and the testimony should have been excluded, we reasoned as follows:

A party must be able to rely on the interrogatories and answers of other parties in the same suit. Otherwise a multiparty case would require redundant interrogatories with identical questions and answers. Rule 168 already limits the number of interrogatories. Although rule 168(2) limits interrogatories to use *against* the answering party, there is no such limit on who may use them. 755 S.W.2d at 530. (Emphasis in original.)

This reasoning is equally applicable in the present case and is in keeping with the primary purposes of discovery which are to enable a party to obtain the fullest knowledge of issues and facts prior to trial and

to prevent trial by ambush. *Braniff, Inc. v. Lentz,* 748 S.W.2d 297, 301 (Tex.App.—Fort Worth 1988, writ denied). It is also in keeping with the spirit and intent of Rule 1 of the Texas Rules of Civil Procedure:

Rule 1. Objective of Rules

The proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law. To the end that this objective may be attained with as great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable, these rules shall be given a liberal construction.

Tri–State was on notice that Dr. Mary Ellen Hayden was a potential expert witness for Nicar.

■ The record reflects that when Tri–State objected to Nicar's intention to call Dr. Hart, Nicar explained the reason for Dr. Hayden's absence as recounted above. The court characterized Dr. Hart as a substitute for Dr. Hayden and also noted that Tri–State had been furnished with a copy of Dr. Hayden's report which, in the court's eyes, prevented surprise. Counsel for Tri–State correctly pointed out to the court that absence of surprise was not the issue and that Tri–State had no burden to show surprise before the testimony could be excluded. *Yeldell v. Holiday Hills Retirement and Nursing Center, Inc.,* 701 S.W.2d 243, 247 (Tex.1985); *Morrow v. H.E.B., Inc.,* 714 S.W.2d at 298. Tri–State also argued that Nicar had failed to meet his burden under Tex.R.Civ.P. 215(5), to show good cause for admission of the testimony. *Yeldell,* 701 S.W.2d at 247; *Morrow,* 714 S.W.2d at 298. Without making any affirmative statement regarding good cause, the court then ruled that Dr. Hart would be allowed to testify.

Appellant cites several cases for the proposition that there must be an affirmative finding of good cause to support the court's decision to admit the testimony in question. However, while all the cases require a *finding* of good cause, only one, *Walsh v. Mullane,* 725 S.W.2d 263, 264 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *suggests* that such an express finding must affirmatively appear in the record. In that case, the sole showing of good cause was an unsworn statement by the proponent's attorney that he "had not met" the witness whose testimony was offered until the day she was called to testify. No further indication of good cause was offered nor did the attorney or offering party testify that they did not earlier know that the witness had knowledge of relevant facts. The record indicated instead that they did know about the witness prior to the day when they called her. In holding that the court erred in admitting the testimony, the appellate court said,

The trial court never made an express finding that "good cause sufficient to require admission" of the testimony existed. It merely overruled appellant's objection and allowed Wilkins to testify. The court stated, "I'm inclined to go ahead, let him use her only because he could bring her back as a rebuttal witness without naming her as a grunt-and-groaner."

This is not sufficient to constitute "good cause sufficient to require admission." Neither rule 168(5) nor 215(5) excludes rebuttal witnesses or "grunt-and-groaners" from disclosure or sanctions. 725 S.W.2d at 264–265.

We believe that the statement regarding an "express finding" of good cause is related to the situation in the *Walsh* case and should not be read as a broad requirement that a finding of good cause must affirmatively appear in the record to support a trial court's discretionary admission of testimony. *See Galvin v. Gulf Oil Corp.,* 759 S.W.2d 167, 172 (Tex.App.—Dallas 1988, writ denied). A review of the record in the case before us reveals that the court considered many factors and lengthy argument by counsel for both sides before ruling on the admissibility of the testimony. It is implicit in his comments, his questions to counsel and his final ruling on the issue that he believed good cause existed. Such an implicit finding is sufficient. *City of Brownsville v. Pena,* 716 S.W.2d 677, 683 (Tex. App.—Corpus Christi 1986, no writ).

■ We are equally unpersuaded by Tri–State's contention that the trial court improperly decided to allow Dr. Hart to testi-

fy solely on the basis of a lack of surprise. Although the court obviously considered the absence of surprise among many factors in reaching its decision, there is no evidence that this was the sole basis for its ruling. While the objecting party no longer has a burden to show surprise in seeking to exclude the testimony, this does not mean that the trial judge no longer has the discretion to consider lack of surprise in finding good cause. *Sharp v. Broadway National Bank,* 761 S.W.2d 141, 146 (Tex. App.—San Antonio, no writ). Under the totality of the circumstances in this case, we find no abuse of that discretion. Tri-state's first point of error is overruled.

█ In further reliance on the principle set forth in *Smith v. Christley, supra,* we reject Tri–State's contention in point of error two that its undisclosed actuary economist should have been allowed to testify.

When Tri–State attempted to call the economist to testify regarding damages, both Nicar and Folsom objected on the grounds that the expert had not been identified. Tri-state responded that it intended to use the economist only to testify about Nicar's damages and, since Nicar had never requested the names of expert witnesses, Tri–State was under no obligation to name them. Folsom, who had requested identification of experts, strenuously insisted that any testimony from an actuary economist would impact her damages as well. The court refused to allow the testimony.

We agree with decision of the court for two reasons. First, under *Smith v. Christley,* Nicar was entitled to rely on Tri–State's answers to Folsom's interrogatories just as Tri–State was put on notice by Nicar's answers to that third party. *Smith v. Christley,* 755 S.W.2d at 530. Second, while the third party in *Christley* had settled and was not present at trial, Folsom was very much present and properly objected in her own right to the testimony which could have strongly impacted her case. Having requested that Tri–State's experts be identified, Folsom was entitled to exclusion of the testimony. Since Tri–State made no showing of good cause for admis-

sion, there was no abuse of discretion. Tri–State also failed to make a bill of exceptions when the trial court refused to allow the witness to testify. *Dames v. Strong,* 659 S.W.2d 127, 132 (Tex.App.—Houston [14th Dist.] 1983, no writ). Tri–State's second point of error is overruled.

█ Points of error three and four challenge the legal and factual sufficiency of the evidence to support the jury's finding of loss of past earnings by Nicar. In reviewing a no evidence challenge we are able to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Factual sufficiency points require that we consider and weigh all the evidence. The finding must be upheld unless we determine that the evidence is so weak or the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate,* 244 S.W.2d at 661. When, as here, both legal and factual sufficiency points are raised, we must rule on the no evidence points first. *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400, 401 (Tex.1981).

█ The jury was asked to determine what sum of money would compensate Nicar for his loss of earnings in the past and it answered with the sum of $91,500. Tri–State says that to recover lost earnings, Nicar must have shown the actual amount of his earnings (i.e. actual wages and actual hours worked and employment history) or the value of his services with reasonable certainty. *Home Interiors & Gifts, Inc. v. Veliz,* 695 S.W.2d 35, 42 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Ryan v. Hardin,* 495 S.W.2d 345, 349–350 (Tex.Civ. App.—Austin 1973, no writ.) However, the law requires only the kind of proof of which the fact to be proved is susceptible. *Tucker v. Lightfoot,* 653 S.W.2d 587, 593 (Tex.App.—San Antonio 1983, no writ).

*Tucker* also states that compensation for the loss of time resulting from a personal injury is to be measured by the amount of money which the injured person might reasonably have earned in the same time by the pursuit of his ordinary occupation, *Texas & N.O.R. Co. v. Wood,* 166 S.W.2d 141 (Tex.Civ.App.—San Antonio 1942, no writ) *or* by the amount he commonly earned. *Galveston, H & S.A. Railway Co. v. Mallott,* 6 S.W.2d 432 (Tex.Civ.App.—Galveston 1928, error dism'd). We believe that Nicar met this burden.

Nicar, his wife and his boss presented evidence, including income tax returns, that he earned $17 per hour for a total of more than $29,000 in 1981 prior to the accident. His boss and his wife testified that he had been able to work only one day between December 11, 1981, the date of the accident, and November of 1982. The most he had made after that time was between $17,000 and $20,000 a year. Furthermore, Nicar's boss testified that, had he not been injured, Nicar would have been promoted to superintendent which would have resulted in an annual salary of $35,000 to $45,-000. These figures clearly constitute evidence of past earnings and were sufficient to support the jury's award. Tri–State's third and fourth points of error are overruled.

▇▇ Points of error five through eight challenge the legal and factual sufficiency of the evidence to support the jury's award of $500 to appellee Daniel Miller for loss of future earning capacity and its awards of $5000 for physical impairment in the past and future. Point nine complains that the award for past and future physical impairment was grossly excessive.

Miller's neck, back, knee and ear were injured in the accident. His chest was also bruised. The knee injury required surgery. Prior to his injuries Miller was a heavy equipment operator. After the accident he did light duty work, mechanical work and odd jobs until he went to work for the Harris County Constable's office in 1987. While Tri–State claims that absolutely no evidence was presented to show that his injuries would result in future incapacity, it admits that Miller testified that he was still suffering from pain at the time of trial. Specifically, he claimed that low back pain bothers him when he sleeps, when he tries to lift anything heavy, or when he sits for long periods of time, which he is required to do in his job with the Constable's office. The pain also prevents him from water skiing, which had been a favorite recreational activity of his before the accident.

▇▇ Loss of earning capacity that a plaintiff will suffer in the future is always uncertain and is left largely to the jury's sound judgment and discretion. *McIver v. Gloria,* 140 Tex. 566, 169 S.W.2d 710, 712 (1943). There is no general rule governing the proof required, except that each case is judged on its particular facts and the damages need be proved only to the degree to which they are ascertainable. *Id.* Recovery for loss of future earning capacity does not require a showing of lost earnings. *Springer v. Baggs,* 500 S.W.2d 541, 544 (Tex.Civ.App.—Texarkana 1973, writ ref'd n.r.e.). Furthermore, as *Springer* explains,

> Factors such as stamina, efficiency, ability to work with pain, and the weakness and degenerative changes which naturally result from an injury and from long suffered pain are legitimate considerations in determining whether or not a person has experienced an impairment in future earning capacity.... Our courts have consistently upheld judgments for reduced earning capacity, even though the plaintiff was making as much or even more money after the injury than before, where it was shown that pain, weakness, diminished functional ability or the like indicated that plaintiff's capacity to get and hold a job, or his capacity for duration, consistency or efficiency of work was impaired. 500 S.W.2d at 544–545.

▇▇ Damages for loss of earning capacity do not have to be based on any specific degree of physical impairment, but can be based on a composite of all of the factors affecting earning capacity. *Goldston Corporation v. Hernandez,* 714 S.W.2d 350, 352 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). From the evidence presented

the jury could reasonably have found that Miller would suffer damages of $500 in loss of earning capacity in the future. That finding will not be disturbed. Points of error five and six are overruled.

■ As for past and future physical impairment, this court clarified the proof required for recovery of those damages in *Allen v. Whisenhunt,* 603 S.W.2d 242 (Tex. Civ.App.—Houston [14th Dist.] 1980, writ dism'd) as follows:

> [T]he injured party must sustain the burden of proving that the effect of his physical impairment extends beyond any impediment to his earning capacity and beyond any pain and suffering to the extent that it produces a separate and distinct loss that is substantial and for which he should be compensated. 603 S.W.2d at 244.

■ In the *Allen* case, evidence of the plaintiff's inability to play basketball or engage in other strenuous tasks for his own benefit or enjoyment was sufficient to support an award of damages for physical impairment. *Id.* In the case before us, testimony showed that prior to the accident Miller was an active and athletic person who regularly participated in sports, especially water skiing. After his injuries, he was unable to water ski at all. His back continues to cause him pain and he can no longer lift anything heavy as he used to do. Like Allen's loss, Miller's complaints, including his loss of the ability to enjoy recreational sports activities, extend beyond an impediment of earning capacity and beyond pain and suffering and support recovery for past and future impairment. The general rule is that, on appeal, the jury's findings on damages will not be disturbed on the grounds of excessiveness if there is any probative evidence to sustain the award. *Detar Hospital, Inc. v. Estrada,* 694 S.W.2d 359, 362 (Tex.App.—Corpus Christi 1985, no writ); *Armellini Express Lines of Florida, Inc. v. Ansley,* 605 S.W.2d 297, 310 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Points of error seven, eight and nine are therefore overruled.

Points ten and eleven complain that there was no evidence or, alternatively, insufficient evidence to support the jury's award to Kristie Folsom of $3,000 for loss of future earning capacity. Point twelve claims that the award of $85,000 to Folsom for future disfigurement was grossly excessive and requests that we order a remittitur of $50,000 of that amount. By cross-point Folsom challenges the $50,000 remittitur granted by the trial court against the jury's award to her of $200,000 for past physical pain and mental anguish.

Kristie Folsom, who was a passenger in Miller's car, was seventeen years old at the time of the accident in December, 1981. She suffered significant injuries including extensive lacerations and abrasions to her face, lacerations of her left eyelid, glass puncture wounds to her cheek, severe lacerations to her knee, a broken collarbone, a shattered tooth, and injuries to her spine. At the time of trial she had undergone five surgeries including two plastic surgeries on her face. Expert medical opinion was that she would require at least one other plastic surgery. In spite of these surgical procedures, the scarring to her face is permanent and her eyelid is deformed. She has craters in her cheeks and forehead, and glass which could not be removed remains in her face under her nose and chin. In addition, she continues to suffer pain from the injury she sustained to her knee which is permanently scarred. There is a large knot in the middle of her collarbone where it failed to heal properly.

■ The evidentiary standards set out above in our review of Nicar's award for loss of future earning capacity apply to the award to Folsom as well. Under those standards, the single fact that she will need at least one additional plastic surgery is sufficient to support the jury's award of $3000 to Folsom for loss of future earning capacity. Expert testimony as well as Folsom's past medical history established that she could miss several days or even weeks because of additional surgery. In addition, more than one surgery may be required. In the case of a young person who has not established a permanent occupation or an

employment history the jury must determine lost future earning capacity largely from their common knowledge and sense of justice. *Fowler v. Pedlar,* 497 S.W.2d 399, 401 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ). Under the facts of this case, the award of $3000 was supported by the evidence. Points of error ten and eleven are overruled.

■ ' Point of error twelve challenges the jury's award to Folsom of $85,000 for disfigurement in the future and asks this court to order a remittitur in the amount of $50,000.

While appellant mistakenly relies on *Flanigan v. Carswell,* 159 Tex. 598, 324 S.W.2d 835 (1959) in seeking this remittitur, the Supreme Court set out the correct standard for remittitur in *Pope v. Moore,* 711 S.W.2d 622 (Tex.1986), as follows:

> Factual sufficiency is the sole remittitur standard for actual damages.... In determining whether damages are excessive, trial courts and courts of appeals should employ the same test as for any factual insufficiency question.
>
> Lower courts should examine all the evidence in the record to determine whether sufficient evidence supports the damage award, remitting only if some portion is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust. Courts of appeals also should detail the relevant evidence, and if remitting, state clearly why the jury's finding is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust. 711 S.W.2d at 624.

See also *Larson v. Cactus Utility Company,* 730 S.W.2d 640 (Tex.1987), which expressly overrules *Flanigan.*

■ The matter of future disfigurement is necessarily speculative and there is no mathematical yard stick by which one can measure damages for it. Each case must be judged on its own facts and considerable discretion must be vested in the jury. *Rosenblum v. Bloom,* 492 S.W.2d 321, 325 (Tex.Civ.App.—Waco 1973, writ

ref'd n.r.e.). The evidence of Kristie Folsom's extensive and permanent injuries detailed above was factually sufficient to support the jury's award for future disfigurement. The award of $85,000 which, considering her life expectancy, amounts to $4.08 per day, is not excessive. No remittitur is warranted. *See Northwest Mall, Inc. v. Lubri-lon International,* 681 S.W.2d 797 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Point of error twelve is therefore overruled.

■ By crosspoint Folsom claims that the trial court erred in ordering her to remit $50,000 of the amount awarded for physical pain and mental anguish in the past and asks that we reinstate the jury's award of $200,000. Our standard of review of this crosspoint is also established by the holdings in *Pope v. Moore* and *Larson v. Cactus Utility Company, supra.* While *Pope* is concerned with the circumstances under which an appellate court may properly order a remittitur, *Larson* clarifies our duty in reviewing a remittitur granted by the trial court. "[N]o court is free to substitute its judgment for that of the jury. A court of appeals should uphold a trial court remittitur only when the evidence is factually insufficient to support the verdict." 730 S.W.2d at 641. We therefore review all the evidence and uphold the remittitur only if the evidence is so weak that the jury's verdict was manifestly erroneous or unjust. *In re King's Estate,* 244 S.W.2d at 661; *Rio Grande Ltd. Partnership v. Mackechney,* 753 S.W.2d 815 (Tex.App.—Houston [1st Dist.] 1988, no writ).

In addition to evidence of the severity of Folsom's injuries, her five surgeries and other painful medical treatments including facial injections to combat scarring, the jury observed this young woman and heard poignant testimony of her terror following the accident and her immediate post-trauma experience at the scene, the painful and frightening emergency room treatment, and her fear that she would die in the hospital as had her brother the previous year. She also testified that following each plastic surgery she was unable to see and experienced extreme pain. Her self-

image and self esteem were violently impacted by the injuries and scarring she suffered and she did not want anyone, even her family and friends, to see her. She became almost reclusive as a result. Before each surgery she was frightened but hopeful that the procedure would restore her former appearance. After each surgery she suffered the disillusion and disappointment of realizing that she still did not look as she had before the collision. This realization caused her deep depression. In short, before the collision Kristie was a happy, positive, outgoing and beautiful teenager who took pride and pleasure in her appearance. After the collision she came to think of herself as ugly and "not normal." She cried often and displayed insecurity in her behavior. Several years after the accident she removed all the mirrors in her room and replaced them with pictures.

■■■■■ Amounts awarded for pain and mental anguish are necessarily speculative and are within the province of the jury. *Gulf States Utilities Co. v. Dryden,* 735 S.W.2d 263, 268 (Tex.App.—Beaumont 1987, no writ); *International Harvester Co. v. Zavala,* 623 S.W.2d 699, 708 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). The extent of the record on the physical pain and mental anguish suffered by Folsom is more than sufficient to support the jury's award for that element of her damages. Appellants cite no case law either in their motion for new trial or before this court holding similar findings excessive nor do they offer any rationale for that proposition. Neither do they direct our attention to any probative evidence to contradict Folsom's testimony on this element of damages. When ordering a remittitur, a trial court is bound by the factual sufficiency standard set out in *Pope v. Moore,* 711 S.W.2d at 624. No court is free to substitute its judgment for that of the jury. *Larson v. Cactus Utility Co.,* 730 S.W.2d at 641. The trial court therefore erred in ordering Folsom to remit $50,000 of the award. Appellee Folsom's first crosspoint of error is sustained.

Accordingly, the order of remittitur is set aside and the judgment based on the jury's verdict in favor of Kristie Folsom for physical pain and mental anguish in the past in the amount of $200,000 is reinstated. We also reinstate the awards of pre-judgment and post-judgment interest on the full amount of Folsom's damages. All other damage awards to Folsom, including interest, are affirmed. Folsom's crosspoint as to frivolous appeal is overruled.

The judgment in favor of Kristie Folsom, as reformed, is affirmed. The judgments in favor of Kenneth Nicar and Daniel Miller are also affirmed.