| 67 | 473 |
| 76 | 239 |
| 67 | 473 |
| 79 | 343 |
| 67 | 473 |
| 83 | 39 |
| 67 | 473 |
| 87 | 633 |
| 67 | 473 |
| 88 | 24 |

No. 2241.

THE GALVESTON CITY RAILROAD COMPANY *v.* JAMES M. HEWITT.

1. NEGLIGENCE.—When a person inadvertently omits or fails to do some act required in the discharge of a legal duty to another, whether such duty arises from contract or from the nature of the employment in which the person is engaged, such omission constitutes actionable negligence, if as an ordinary and rational sequence it produces damage to another.

Syllabus.

2. NEGLIGENCE.—Refinement of distinction as to different degrees of negligence is often difficult of application in the administration of justice. What facts will constitute that degree of diligence which the law requires, and from the absence of which, when injury results, damages should be recovered, must depend on the circumstances of each case. The greater the hazard and danger to others involved in the business pursued, the more complete must be the exercise of care.

3. SAME.—The duty of exercising extreme care in the operation of a passenger train on a railway results not alone from the contract of carriage, express or implied; it arises also from the hazardous character of the business and the fact that human life is imperiled by it.

4. RAILWAY COMPANIES.—The doctrine sometimes held that a carrier owes no duty to persons other than passengers and employes, aside from the duty not to wantonly or intentionally injure them, has never received the sanction of courts in Texas.

5. SAME.—It is the duty of railway companies to have a lookout kept, not only where traveled ways cross their track, but throughout its length; a duty which is required by the safety of their passengers, as also that of those who might otherwise be injured.

6. STREET RAILWAYS.—Street railway companies have no exclusive right to that part of a street covered by their track; the duty results that they shall see that their track is clear as their cars pass over it. This obligation is as imperative and firmly fixed as is the duty of steam railway companies to their passengers; both result from the hazard of the employment to human life, no less than from the contract for carriage.

7. SAME—NEGLIGENCE.—If an adult person be seen on the track of a street railway, the person operating it may assume (as long as the danger of injuring him by a moving car does not appear imminent, but no longer) that he will leave the track before the car reaches him. When the danger is imminent, then the duty on the part of the carrier results to use the highest degree of care to avert it. A failure to do this is culpable negligence, in the absence of the contributory negligence of him who is threatened by the danger.

8. SAME.—If, however, a child nineteen months old is on a street railway track, in advance of a moving car, the person operating it is not at liberty to act on the assumption that it will see the danger and avert it.

9. SAME—DILIGENCE.—A street railway company is bound to use such diligence as will enable it to know whether the track in front of a moving car is clear, and, if necessary, to use the highest degree of diligence to know that fact. The care necessary to avoid injury to one on the track before an advancing train embraces every degree of diligence.

10. CHARGE OF COURT.—A judgment will not be reversed on account of a charge of the court which is correct as applicable to the facts in evidence, though as an abstract legal proposition it might not be correct as applicable to a different state of facts.

11. JUDGMENT FOR A MINOR.—A moneyed judgment in favor of a minor will not authorize the next friend who prosecuted the suit to receive the money. It can be paid over only to some one who has qualified as guardian of the minor's estate, or must be retained in the custody of the court until the minor is twenty-one years old.

12. VERDICT.—See statement of case for facts under which it was held that a verdict for seven thousand five hundred dollars was not so excessive as to require a reversal, in an action for damages against a street car railway company for injuring a child.

APPEAL from Galveston.   Tried below before the Hon. W. H. Stewart.

This suit was brought in the name of appellee, an infant nineteen months old at the date of the injury complained of.   He was run over by a street car of appellant in a public street in Galveston between four and five o'clock in the day time, and by a car under the control of one of appellant's employees.   The injury was to the spine, and resulted in an incurable disease, which would, as he grew up, disable him from competition with laboring men.   A detail of the testimony would not help to a clearer understanding of the opinion.   It may be added that the evidence that his spine was injured when the car ran over the appellee was circumstantial, since the extent of his injury was not immediately apparent, though the evidence seemed conclusive.

The verdict and judgment were for seven thousand five hundred dollars.

*F. Charles Hume,* for appellant:  On the proposition that the plaintiff, being a mere stranger to the defendant, and neither a passenger on its car nor otherwise in privity with it, was entitled to no duty from the defendant, save the observance of ordinary care; and no degree of negligence other than ordinary or gross would render the defendant liable to the plaintiff for injuries inflicted upon him by it, cited Houston & Texas Central Railway Company v. Smith, 52 Texas, 183, 184; Houston & Texas Central Railway Company v. Sympkins, 54 Id., 622; Texas & Pacific Railway Company v. O'Donnell, 58 Id., 36, 39, 42; Galveston, Houston & Henderson Railroad Company v. Moore, 59 Id., 67; Shearman & Redfield on Negligence, second edition, section 447, in connection with sections 266, 493, and cases cited in note to latter section; Philadelphia & Reading Railroad Company v. Spearen, 47 Pennsylvania State, 303, and Philadelphia & Reading Railroad Company v. Hummel, 44 Pennsylvania State, 375; 2 Rohrer on Railroads, 1069, citing Banning v. Baltimore & Ohio Railroad Company, 24 Maryland, 108, 115, 121, 126, and State for use Coughlon v. Baltimore & Ohio Railroad Company, Id., 84, 94, 101, 103; 1 Thompson

on Negligence, 397, citing Pendleton Street Railroad Company v. Shires, 18 Ohio State, 255, 261, 262; Pendleton Street Railroad Company v. Stallman, 22 Id., 1, 19, 23, 25, 26; Baltimore City Passenger Railroad Company v. McDonnell, 43 Maryland, 534, 551–553; Unger v. Forty-second Street Railroad Company, 51 New York, 497; Gilligan v. New York & Harlem Railroad Company, 1 E. D. Smith, 453, 457; Gallagher v. Crescent City Railroad Company, Supreme Court Louisiana, 1885, 20 The Reporter, 621; citing Hearne's case, 34 Louisiana Annual, 163; Montford v. Schmidt, 36 Louisiana Annual, 750; 92 Pennsylvania State, 31; 88 Pennsylvania State, 520; 36 Missouri, 492, and 42 New York, 459.

*M. E. Kleberg* and *E. D. Cavin*, for appellee: On their proposition that it was the duty of all persons running or operating street cars on public thoroughfares in crowded cities to observe the highest degree of diligence towards infants so young as to be without discretion, and who can not be guilty of negligence themselves, and slight negligence would make such persons liable in damages for injuries done to such infants, cited 1 Thompson on Negligence, pages 452 and 431, section 9; Id., volume 2, pages 887 and 888; see note 4, Thompson on Negligence, volume 2, page 1197; Liddy v. St. Louis Railroad Company, 40 Missouri, 519; Robinson v. Cone, 22 Vermont, 225; Baltimore City Passenger Railroad Company v. McDonnell, 43 Maryland, 553; Railroad Company v. Gladmon, 15 Wallace, 401; Deering on Negligence, section 21.

STAYTON, ASSOCIATE JUSTICE. The charge of the court complained of in the second assignment was correct, and there was evidence which made the charge applicable to the case. The appellee, a child nineteen months of age, was seen on the track of appellant's street railway, in advance of an approaching car, which ran over him. Whether the driver saw the child does not appear, but the inference, from the fact that he did not stop the car until he had reached the next corner after running over the child, is that he did not.

The only person who testified in the case, that saw the accident at the distance of about one hundred feet from the approaching car, saw the child on the track between himself and the car, and gave a warning cry of danger, which was unheard or unheeded. The driver was on the car, but whether at his post or inside of the car is left in doubt. The animal drawing the car

seems to have seen the danger, which the driver ought to have seen, and ran off to one side of the track.

The accident occurred in a public street about four or five o'clock on a bright afternoon. The charge given without request made the right of the appellee to recover to depend upon the fact that his injury resulted from the negligence of the driver, and it assumed no fact. It informed the jury that "negligence is the want of such care and prudence as prudent persons observe under similar circumstances, and negligence is a question of fact to be proved just as any other fact," and that the burden of proving its existence rested upon the plaintiff.

At the request of the defendant the court gave the following instructions: "If you believe from the evidence that the plaintiff was injured by being run over by the car, you will find for the defendant unless it appears to *your satisfaction* that the running over of the plaintiff by the car was by reason of the negligence of the driver.

"If you believe, from the evidence, that the plaintiff was injured, but do not believe that such injury resulted from the plaintiff being run over by the car, you will find for the defendant."

The brief and argument for appellant assert that the charge "absolutely assumes, presupposes, that the plaintiff was injured by the defendant, and that the injury was due to defendant's negligence." The charges contain no such assumptions, and are remarkably free from such defects.

At request of counsel for appellee the court instructed the jury as follows: "The jury are instructed that it was the duty of the defendant company to exercise the highest degree of diligence towards a child of tender years and without discretion, and that slight negligence would make defendant company liable in damages." This charge is assigned as error.

Since the case of Coggs v. Bernard, three degrees or grades of negligence with their equivalent grades of diligence, have been recognized by English and American text writers, and by the courts; but, however correct in theory the classification may be, the utmost difficulty has been found by the courts in applying it to the ordinary affairs of life; and many of the most learned have regretted their recognition, while all, in the actual adjudication of cases, have more or less ignored the classification. While to the mind of the learned jurist, trained to theoretical refinements and capable of making nice distinctions, grounds on which the grades may stand may be perceived, yet the same

minds, when called upon to apply the theories to the facts of given cases, will be unable to fix the point in fact at which the one grade ceases to exist, and another begins.

Theories which can not be given a practical effect, even by those most skilled in technically correct theorizing, certainly ought not to be given much weight in the adjudication of the multiform affairs of life, which must be conducted through persons of ordinary intelligence largely, without any theoretical or technical learning.

When a person inadvertently omits or fails to do some act required in the discharge of a legal duty to another, whether such duty arises from contract or from the nature of the employment in which the person is engaged, then such an omission constitutes actionable negligence, if as an ordinary or natural sequence it produces damage to another.

The ommission may be classified as gross or slight negligence or simply as negligence, or as failure to use the highest, ordinary or slight degree of diligence, but the legal obligation, at all events, to make compensation to the injured person exists if the omission was a breach of duty and the proximate cause of the injury. What facts will constitute that diligence which the law requires, must depend on the circumstances of each particular case. The omission must be considered in relation to the business in which the person, whose duty it is to exercise care, is engaged.

If the business be one hazardous to the lives of others, the care to be used must be of a nature more exacting than required where no such hazard exists; the greater the hazard the more complete must be the exercise of care.

The exercise of that care requisite to the discharge of a legal duty towards an adult person of intelligence and not wanting in physical ability to take care of himself, if exercised towards a child of tender years, wanting in intelligence and ability to take care of itself, would often amount to what is usually termed gross negligence. A railway carrier of passengers may, without subjecting itself to the charge of negligence, permit an adult passenger to pass and repass from one passenger car to another while in motion, or to select his own seat or position in a car, if there be not some danger in the position not open to the observation of the passenger; but were an infant of tender years and without discretion, traveling with its parents, to escape from their control, and to attempt to do the same things, it would evidently be the duty of the servants of the carrier, if they knew

of it, to restrain the acts of the infant in these respects, or any other from which injury to it was likely to result; and a failure to do so would be negligence, which would render the carrier liable for any injury that might result from such neglect.

It is frequently said that a carrier of passengers is bound to exercise a high degree of care for their safety; and that, for an injury resulting to them from what is termed negligence or slight negligence, the carrier will be liable; and that the duty to exercise extreme care results from the contract of carriage, express or implied. This is true, but it is not the whole truth, for the duty arises from the hazardous character of the business, and the fact that human life is imperiled by it. The contract creates the relation of carrier and passenger, but that is not the main source from which springs the duty of the carrier to exercise a high degree of care.

It has sometimes been said that a carrier owes no duty to persons other than passengers and employes, other than that it must not intentionally, willfully or wantonly injure them. This doctrine has not been sanctioned in this State.

Ordinary railway companies, running cars propelled by steam, have the exclusive right to the use of their tracks, except at such places as they are intersected by public crossings or such private ways as they may permit, and they may therefore expect that no one will violate this right, and may rely upon a clear track, but it is very generally held that, notwithstanding this, such is the hazardous nature of the business in which they are engaged, it is the duty of such carriers, not only for the safety of their passengers, but for the safety of any one who may be on the track, to keep a look out. Street railways have no exclusive right to the use of the part of a street covered by their track, but all persons have the right to use the street for the purposes for which streets are ordinarily used, and, from this fact, such companies may expect that other persons will use the street, as they have the right to do, and it is therefore incumbent upon them to ascertain whether the track be clear.

This duty the law casts upon them as one of the conditions on which they are permitted to use streets, which to some extent they divert from the more ordinary uses, for the private advantage of the carrier, as well as the public convenience. This duty is as firmly fixed on this ground, and upon the ground of the hazardous character of such a business conducted in the street of a town or city, as is the duty of the carrier of passengers by steam,

fixed by the hazard of that business to human life, or by the contract for carriage.

If a person be seen on the track of either class of railway, it may be assumed, if the person be an adult, that he will leave the track before the train or car reaches him, and this presumption may be indulged so long as danger does not become imminent, but no longer. From the time that danger is seen to be imminent it becomes the duty of such a railway company to use the highest degree of care to arrest it, and a failure to do so will constitute culpable negligence, which may or may not fix liability, as that question may be affected by the contributory negligence of the injured person. No such presemption, however, can be indulged as to the prudent conduct of an infant of no greater age than was the plaintiff at the time he is alleged to have been injured.

It may be assumed, as matter of law, that it is the duty of a street railway company to know that the track in advance of its car is clear, and that it will be liable for any injury resulting from the want of this knowledge, unless its liability is defeated by the contributory negligence of the injured person, or unless it appears that the person injured went upon its track at a place so near the approaching car that the driver, by the exercise of care, could not avoid the injury after the person was seen or might have been seen. This involves the proposition that such a railway company is bound to use such diligence as will enable it to know whether the track in front of its car is clear, and if to this end the exercise of the highest degree of diligence is necessary, it must be used.

If it be seen that a person is on the track of such a railway company, in advance of its car, it must use such care as will avoid injury to such person, if this can be done, and for a failure to do so it will be liable for the injury resulting, unless such liability is defeated by the contributory negligence of the injured person. The care requisite to avoid injury in such a case embraces every degree. The charge of a court must be considered in relation to the facts of the particular case.

In the case before us, the uncontroverted fact is that the child was on appellant's track in advance of the car. Whether it was seen by the driver is not shown, but we concur in the opinion of counsel for appellant, after a careful examination of all the evidence, that the driver did not see it. It was his duty to exercise the highest degree of diligence to ascertain whether persons were

on the track in advance of the car; and, in so far as the charge complained of affects this question, it was correct.   If the driver saw the child on the track in advance of the car, it was his duty to exercise all the diligence then possible to avoid injury to it; and in this aspect of the case the charge was not erroneous.

It is insisted that "the reasonable and probable conclusion is that the child placed itself suddenly on the track immediately in front of the car, so that he was not discernible by the driver; or, being discernible, was seen too late to enable the driver to avert the catastrophe;" and that "this inference is strengthened by the further fact * * * that the mule drawing the car ran off to one side of the track.   The child must have placed himself suddenly and immediately in front of the mule, so near that the momentum of the car hurried it over him and concealed him from the view of the driver at the very moment of the animal's abrupt rearing to one side."   Whether this was so, was for the jury to determine.   If, however, such was the fact, it was still proper that the appellant should have been held to that degree of care required by the charge; under which the jury may have come to the conclusion, even though the child suddenly entered upon the track but a short distance in front of the car, that the injury might have been averted had the driver used such care as the charge required, after the child was seen or ought to have been seen.

A judgment will not be reversed on account of a charge correct when applied to the facts of the particular case, though as an abstract legal proposition it might not be correct, when applied to a different state of facts.   It is insisted that "The verdict of the jury is not sustained by, and is contrary to the evidence, in this: First. There was no evidence that the car ran over plaintiff through the negligence of the driver.   Second. There was no evidence directly to the allegation that plaintiff's injury was caused by the car running over him; and the only support to that allegation was the theoretical inference arising from the bare fact that the car ran over him.   The verdict of the jury is for a sum enormous, extortionate, unreasonable and oppressive, and shows upon its face that it was inspired by partiality, tenderness and compassion for the plaintiff, and by passion and prejudice against, and a desire to punish, the defendant, and was not the result of fair, deliberate and just consideration of the evidence."

We are of the opinion that the evidence was sufficient to authorize the jury to conclude that the car ran over the plaintiff

through the negligence of the driver. If the appellant desired to rebut the case made by the uncontradicted evidence, or to show more fully the circumstances attending the injury, it should have called, as a witness, the driver, who may be presumed to know the facts bearing on the question of his negligence. This was not done, nor his absence accounted for.

The evidence tending to show that the injury to the plaintiff was caused by the car running over him, is not of that direct character which may be offered in most cases; but we are not prepared to hold that the jury, from the evidence, was not authorized to find that the injury resulted from the cause alleged. The testimony of the medical expert was based upon the condition of the child long after the injury; but his condition from the time the car ran over him until the time of the trial was made known to the jury and the surgeon, who based his opinion as to the nature of the hurt from which the injury resulted upon his own examination of the child while under his treatment. Other physicians or surgeons saw and treated the child soon after the car ran over him, and if the appellant desired to contradict the statements of the parents of the child as to his condition, or desired the opinions of these persons as to the probable cause and nature of the injury, they might have been called as witnesses. This was not done, nor any reason shown why it could not be done.

Under such circumstances the jury was authorized to draw all such inferences from the evidence brought before them as were reasonable, and we can not say that their conclusion is not sustained by the evidence.

The verdict is large, but the evidence shows that the injury is one from which the appellee can never recover. He must pass through life an invalid, and most probably will not reach the length of days to which, but for the injury, he might attain. We can not set the verdict aside on the ground that it is excessive.

The judgment is in favor of the appellee, and furnishes no authority to the next friend to receive the sum to be collected under it. The execution should run in the name of the appellee, and the money to be collected on it paid to such person as may have qualified as guardian of the minor's estate, and if there be no such guardian, then it should be paid into court and there remain until a guardian qualifies, or the minor becomes twenty-one years of age. The judgment will be affirmed.

Opinion delivered March 8, 1887.        *Affirmed.*