DURHAM TRANSPORTATION, INC.
and Andres Perez, Appellants,

v.

Juan Manuel VALERO, Sr., and Cecilia Valero, Individually and as Next Best Friends of Juan Manuel Valero, Jr., Appellees.

No. 13–93–060–CV.

Court of Appeals of Texas,
Corpus Christi.

Feb. 28, 1995.

Rehearing Overruled April 6, 1995.

John E. Chosy, Brownsville, for appellants.

Ernesto Gamez, Jr., Brownsville, Larry Zinn, San Antonio, for appellees.

Before SEERDEN, C.J., and KENNEDY[1] and DORSEY, JJ.

## OPINION

DORSEY, Justice.

Durham Transportation and Andres Perez appeal a judgment awarding actual and exemplary damages to Juan and Cecilia Valero. While crossing a two-lane highway towards a parked school bus, nine-year-old Juan Valero, Jr. was struck by a car driven by Laura Galicia. Juan was injured in the collision and his mother, Cecilia Valero, witnessed it. Mr. and Mrs. Valero sued Galicia, Perez, and Durham Transportation individually, and on Juan Jr.'s behalf, for his injuries.

## I. FACTS

Durham Transportation contracted with the Brownsville Independent School District to provide school bus transportation for children within the district. On the morning of September 23, 1991, Andres Perez, a Durham employee, drove a school bus to Tejon Road to pick up two children from different families. The families moved to the school district after school started and the children needed transportation to an out-of-zone school because the local elementary school was full. The morning of the 23rd was the first pick-up for these two children. The details of the proposed pick up that morning are unclear.

According to Perez, he arrived sometime after 7 a.m. and did not see the children at the mailboxes. He circled the area looking

for the children and still did not see them. Around 7:10 he backed the bus into the driveway of a utility substation across the street and west of the mailboxes. He made a house-to-house search for the children and did not find them. He testified that he had gone back into the bus and was calling his dispatcher on the two-way radio to check the time and location of the proposed pick up when the collision occurred.

Juan and his mother came out of the neighborhood to Tejon Road and saw the bus parked across the road and perpendicular to it to their right. As they approached the area across the street from the bus, Juan ran across the road and a passing motorist, Laura Galicia, struck him after he crossed the center line.

Juan was injured; he suffered a non-depressed linear fracture of the skull and was hospitalized for four days. His medical bills totalled approximately $12,500.

The Valeros sued alleging that Galicia, Perez, and Durham were negligent and Perez and Durham were grossly negligent. The jury apportioned the parties' negligence as follows: Galicia 0%, Juan 5%, Mrs. Valero 0%, Perez 25%, and Durham 70%. The jury awarded damages to Juan for past physical pain and mental suffering $30,000; physical impairment in the past $10,000; and physical pain and mental anguish in the future $100,000. Cecilia Valero was awarded $12,500 for Juan's past medical expenses and $5,000 for mental anguish in the past for witnessing her son's injuries. Juan was also awarded $800,000 in exemplary damages resulting from Durham's gross negligence and an additional $10,000 exemplary damages resulting from Perez's gross negligence. We reverse and render in part and reverse and remand in part.

## II. STANDARD OF CARE

■ The trial court submitted the case to the jury predicated on the bus company being a common carrier and as such owing a high degree of care to its passengers.[2] Ap-

---

1. Former Justice, retired December 31, 1994.

2. Question No. 1:

Did the negligence, if any, of the persons named below proximately cause the collision in question?

pellants contend that the proper standard of care is that of ordinary care, because Durham is a contract carrier and not a common carrier. Accordingly, appellants claim in their first point of error that the charge places a higher standard of care on them than is authorized by law, and that the trial court erred in so doing.

The standard of care imposed on common carriers is said to be: "[t]he bus company, as a carrier of passengers, is under a duty to exercise such a high degree of foresight as to possible dangers and such a high degree of prudence in guarding against them, as would be used by a very cautious, prudent and competent man under the same or similar circumstances." *City of Dallas v. Jackson,* 450 S.W.2d 62 (Tex.1970) (citing *Gulf, C. & S.F. Ry. v. Conley,* 113 Tex. 472, 260 S.W. 561 (1924)); *International & Great N. R.R. v. Halloren,* 53 Tex. 46 (1880).

The Texas Supreme Court in *Mount Pleasant Independent School District v. Lindburg,* 766 S.W.2d 208 (Tex.1989), held that a school district, operating a bus system to convey its students, was not a common carrier and was not subject to their high standard of care. After reviewing the holdings of a number of states, the court concluded that the majority of jurisdictions addressing the issue have held that no heightened standard of care is imposed on operators of school transportation.

The court gave several policy reasons for its decision. Schools are held to a standard of ordinary care while the children are in their custody. The purpose of the schools is to educate the children; the fact that children are carried in school buses is only incidental to the operation of the schools.

Most early cases imposing a higher standard of care on common carriers did so because of the hazardous nature of the business of carriage. *See e.g., Galveston City Ry. v. Hewitt,* 67 Tex. 473, 3 S.W. 705 (1887). The Court quoted, "From the earliest days of the Republic a finding of certain qualities has been required to impose upon a party the duties of a common carrier. That the transportation is available to the public generally is the distinctive characteristic." *Mt. Pleasant,* 766 S.W.2d at 213 (quoting *Chevallier v. Straham,* 2 Tex. 115, 119 (1847)).

Durham is a private corporation with offices in several states. It contracts with school districts to operate school transportation systems, as it did with the Brownsville Independent School District.[3] It provides its own equipment, hires its own people, and operates with the intent to profit from its contracts. Durham does not run public routes nor is it available for hire to any person other than the school children living within the districts with which it contracts.

The State regulates both common and contract carriers. Article 911a, section 2 of the Texas Revised Civil Statutes, states, "Except as provided by Section 2A of this Act, all motor-bus companies, as defined herein, are hereby declared to be "common carriers" and subject to regulation by the State of Texas . . . ." Appellees argue that, because Durham's functions are included within that defi-

---

Answer "yes" or "no" for each of the following.
 (a) Laura Galicia
 (b) Andres Perez
 (c) Durham Transportation
 (d) Cecilia Valero
 (e) Juan Manual Valero, Jr.
Negligence was defined on the preceding page of the charge as follows:
 'Negligence' means failure to use ordinary care; that is to say, failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.
 'Negligence,' when used with respect to the conduct of a child, means failing to do that which an ordinary prudent child of the same age, experience, intelligence, and capacity would have done under the same or similar circumstances or doing that which such a child would not have done under the same or similar circumstances.
 'Negligence,' when used with respect to the conduct of Andres Perez and Durham Transportation, means failure to use a high degree of care, that is, failing to do that which [a] very cautious, competent, and prudent person would have done under the same or similar circumstances or doing that which a very cautious, competent, and prudent person would not have done under the same or similar circumstances.

3. *See* Tex.Educ.Code Ann. § 21.181(b) (Vernon 1987).

nition for regulatory purposes, Durham should be held to the higher standard of care for tort liability.

The statute explicitly reserves the issue of the duties and liabilities of carriers for the common law except where otherwise provided in the regulations of carriers. TEX.REV. CIV.STAT.ANN. art. 882 (Vernon 1964). Article 911a does not state the duty owed by a covered motor bus company to its passengers. A determination by the legislature that a type of company is a common carrier for regulatory purposes is not necessarily determinative of the company's common law status and resulting standard of care.

Durham Transportation does not meet the test of common carrier. It will only transport those persons who are designated by its contractor, the Brownsville Independent School District. It will not pick up, deliver, or transport members of the general public for a fare. Additionally, there is no sound reason to impose a higher standard of care on a contractor than is imposed on the school district itself. We hold that Durham Transportation is not a common carrier in this case and the trial judge erred in imposing on it a higher standard of care than authorized by law. The same standard applies to Durham's employee and driver, Andres Perez.

Having found that the charge erroneously instructed the jury on the standard of care, we determine whether the error was harmful. To determine harm we consider the pleadings, evidence and the charge in its entirety to determine whether the error "was reasonably calculated to cause and probably did cause rendition of an improper judgment." TEX.R.APP.P. 81(b)(1).

Appellees argue that the finding of gross negligence renders any error in submitting the standard of care harmless. We disagree. The higher erroneous standard of care probably affected the gross negligence issues later in the charge. Certainly the discrepancy in the standard of care owed by Juan, his mother, and Galicia compared with that owed by Durham and Perez in all likelihood influenced the respective allocation of negligence in question two even if it did not affect the answer to question one. In light of the entire charge and the evidence we find the

erroneous submission of the standard of care to be harmful.

■ Appellants urge that we render judgment against plaintiffs claiming that plaintiff's submission of the wrong standard of care constitutes waiver of submission of the correct standard of care. We disagree; the submission of negligence in the charge was defective rather than omitted. The proper result is a remand. *See Winfield v. Renfro,* 821 S.W.2d 640, 657 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *City of Houston v. Matthews,* 605 S.W.2d 628, 630 (Tex.Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). We sustain point of error one and remand for a new trial on both liability and damages. TEX.R.APP.P. 81(b)(1).

## III. LEGAL SUFFICIENCY OF THE EVIDENCE

■ Although our disposition of point one requires a remand of the entire case, we review appellants' no evidence points. If there is no evidence to support the findings favorable to the plaintiffs below, a rendition for the defendants below is required. *See Glover v. Texas Gen. Indem.,* 619 S.W.2d 400, 401 (Tex.1981); *Brownsville Medical Ctr. v. Gracia,* 704 S.W.2d 68, 73 (Tex.App.— Corpus Christi 1985, writ ref'd n.r.e.); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX. L.REV. 359, 368 (1960). To determine the legal sufficiency of the evidence, we review only the evidence that supports the finding and we reverse only if there is no evidence of probative value to support the finding. *Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567, 568 (Tex.1985); *In re King's Estate,* 244 S.W.2d 660, 661–62 (Tex.1951). We do not consider appellants' complaints of factual sufficiency. TEX.R.APP.P. 90(a).

## A. DUTY

By point two, Durham and Perez assert they had no duty to Juan when he was injured. Although recognizing their obligation to their passengers extends to while they are entering or leaving the bus, the defendants argue that no duty had yet at-

tached to Juan when he was injured. *See Matthews*, 605 S.W.2d at 630.

Duty is a question of law for the court to decide from the facts surrounding the occurrence. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990); *Hanselka v. Lummus Crest, Inc.*, 800 S.W.2d 665, 667 (Tex.App.—Corpus Christi 1990, no writ). The point of error is that there is no evidence to support the imposition of the duty.

In determining whether the defendant owed a duty to the plaintiff, the court considers the following factors: the risk, foreseeability, likelihood of injury and weigh those factors against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Greater Houston Transp. Co.*, 801 S.W.2d at 525. Foreseeability of the risk is the main consideration. *Id.* The duty of care arises from the probability of injury to one who may reasonably be foreseen as subject to injury. *Hanselka*, 800 S.W.2d at 668.

Although the duty owed to children is generally the same as that owed to adults, the risk of injury to a child may be greater than that posed to an adult by the same condition or act. The exercise of ordinary care towards a child may require different conduct than would be required towards an adult. *See Wal–Mart Stores, Inc. v. Lerma*, 749 S.W.2d 572, 575–576 (Tex.App.—Corpus Christi 1988, no writ).

Loading and unloading school children is part of transporting them to school. The duty to use reasonable care does not begin with the child stepping onto the bus nor end when the child's feet leave it. The duty to use reasonable care extends to children awaiting or approaching the bus. A number of procedures within the procedure and training manuals were directed to the safety of children immediately before boarding the bus. Juan's injury from being struck by a car is the type of injury the procedures and regulations were designed to prevent. School bus drivers are in a better position to guard against these hazards than are young children. The Texas Education Agency's Course Guide for School Bus Driver Training recognizes that most student fatalities occur outside the bus, usually during loading and unloading.

We hold the evidence is legally sufficient to support imposition of a duty on appellants to use ordinary care during the time after a school bus has arrived in the area of a proposed pick up and before boarding of students has commenced. We overrule point two.

## B. BREACH OF DUTY

The next question is whether appellants breached their duty of care and whether that breach was the proximate cause of Juan's injuries. The proper standard of care is that of ordinary care, although the jury found a breach of a higher standard that was erroneously imposed on the defendants. We review the evidence against the erroneous instruction of "high degree of care" to determine if there is any evidence from which the jury could have found the appellants breached that duty owed to the child injured. Appellees allege the driver, Perez, breached his duty in several ways: 1) he was too early; 2) he didn't know the area; 3) he did not use his emergency flashers or loading lights, and 4) he didn't help Juan safely across the street.

The evidence at trial attempting to establish the time Juan was to be picked up is equivocal. Perez testified that the pick up was to be between 7 and 7:15; the dispatcher did not remember what time Juan was to be picked up. Valero testified at trial that she was told Juan would be picked up at 7:30 that morning; but on cross-examination she admitted that at the time of her deposition she did not recall the time Juan was to be picked up. In the light most favorable to the verdict, the time the children were to be picked up was 7:30; the collision occurred at 7:15 a.m. This evidence suggests that Perez was indeed early. The importance of a driver adhering to a schedule was emphasized at trial. Adhering to the schedule averts the possibility that a child, afraid of missing the bus, will do something foolish and be injured either by the bus or by other motorists.

Given the standard of care on which the jury was instructed, we hold that being 15 minutes early to pick up school children is some evidence that the driver did not exercise that degree of care that "a very cautious or highly prudent" person would have exercised under the circumstances.

 Durham's negligence is premised on its negligent entrustment of a school bus to an improperly supervised, poorly trained, and inexperienced driver and in failing to properly develop the bus stop.

Direct evidence that Perez was improperly trained and supervised came from the testimony of Robert Briseno, a former Durham employee. Briseno is a TEA certified bus driver who worked for Brownsville Independent School District before working for Durham. He testified that Perez was not given the required hours of classroom instruction and he was not observed a sufficient number of hours before he drove children. Briseno claimed knowledge because he was stationed at the Durham gate and could see Perez come to work and observe when he was leaving in a bus. Briseno testified that all training was performed between 8 a.m. and 5 p.m. although the basis for his knowledge was not shown. Appellees attacked Durham time cards showing that on some training days Perez worked more than 8 hours and that if he received 4 hours training that day it was before 9:30 in the morning and in the late afternoon after driving a bus most of the day. Viewing the evidence in the light favorable to the verdict, we find there is legally sufficient evidence that Perez was insufficiently trained and supervised.

We overrule point three on the legal sufficiency of the evidence to support the implied finding of breach of duty.

## C. CAUSATION

 Points three and four attack any causal relationship between Perez's and Durham's alleged negligence and Juan's injuries. Causation is generally a fact question for the jury. *Berry Prop. Management, Inc. v. Bliskey*, 850 S.W.2d 644, 656 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.).

 Juan's crossing the street in order to board the bus is a foreseeable result of Perez's parking the school bus across the street. Although one is not required to anticipate the negligent acts of others, all persons who contribute to an injury are liable. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 313 (Tex.1987). The foreseeable negligence of another does not break the chain of causation.

In reviewing only the evidence and inferences in the light favorable to the verdict, there is legally sufficient evidence to support the jury's finding of proximate cause as to both Durham and Perez; to that extent we overrule points three and four.

## IV. GROSS NEGLIGENCE

 By points six and seven appellants challenge both the legal and factual sufficiency of the evidence to support either the negligence or gross negligence findings. What distinguishes gross negligence from ordinary negligence is the mental state of the defendant. *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex.1981). The defendant must have an actual awareness of the extreme risk created by his conduct and the defendant's conduct must involve an extreme degree of risk. *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex.1994).

Our review of the gross negligence finding and the jury's award of punitive damages is governed by the Supreme Court's recent opinion in *Moriel*. *Moriel* requires that we consider all the evidence relevant to the defendant's state of mind, detail it, and explain why that evidence supports or does not support the award in light of the factors established in *Alamo National Bank v. Kraus*.[4] The *Kraus* factors include: 1) the nature of the wrong; 2) the character of the conduct involved; 3) the degree of culpability of the wrongdoer; 4) the situation and sensibilities of the parties concerned; and 5) the extent to which such conduct offends a public sense of justice and propriety. We review separately the findings of gross negligence against Perez and Durham.

4. 616 S.W.2d 908, 910 (Tex.1981).

## A. Perez's Gross Negligence

 Perez is alleged to be grossly negligent on the following bases: 1) he was early, 2) he was parked on the side of the street opposite from the mailboxes instead of at the designated stop, 3) he did not have his hazard lights on, and 4) he did not assist Juan across the street.

We have already detailed the evidence about the time of the pick up and under our "no evidence" standards concluded that Perez was early. Under the standards enunciated in *Moriel* we consider all the evidence that bears on Perez's state of mind.

Perez's testimony revealed that he arrived in the area of the mailboxes between 7:05 and 7:08 a.m. He thought that the pickup was scheduled for 7–7:15. There were no children present when he arrived. He then parked the bus off the highway in the utility substation parking lot so that he would not obstruct traffic on Tejon Road, a two lane highway. He testified that when he parked in the utility driveway he had no intention of loading children at that location but was attempting to locate the children. Valero also testified that the bus was parked when she and Juan got to Tejon Road.

Appellees contend that Perez was grossly negligent because he parked on the wrong side of the street to load the children. Perez indicates that he did not know what side of the street the children lived on or whether both lived on the same side of the street. Viola Currier, the dispatcher, testified that she gave Perez two addresses and that she did not designate a pick up point for the children. She also testified that Perez was to pick up the children on the same side of the street as the mailboxes.

Additionally, appellees claim that Perez was grossly negligent in failing to use his hazard or loading lights. Like the testimony about the location of the pickup, the testimony about Perez's use of hazard lights is conflicting. Perez agrees that he did not use his overhead loading lights. Perez testified that when he parked the bus, he turned on his emergency flashers; he did not use his loading lights because regulations prohibit their use except when loading or unloading children.[5] The investigating officer testified that he did not recall whether Perez's lights were on and his report did not reflect whether the lights were on. Durham employees and appellees' safety engineer testified that it is improper to use loading lights for any purpose other than loading children and waiting to load children when stopped in the roadway. All the witnesses who testified about the hazard lights agreed that they are generally not visible to motorists who view a vehicle from the side in a position like the bus was parked that day. Johnson recalls seeing some yellow flashing lights but is not certain whether those lights were hazard lights or loading lights. Robles testified that the bus had its parking lights on but not its loading lights.

Lastly, appellees claim Perez was grossly negligent for failing to escort Juan safely across the street. Valero and Juan testified that they saw the bus and thought Perez would cross to get Juan, but they did not speak to Perez before Juan crossed. Perez testified that he was in the bus and did not see Juan until he was already in the street.

Reviewing all the evidence that bears on Perez's state of mind, there is no evidence that Perez had an actual awareness that he was creating an extreme risk of injury to Juan when he parked the bus off the road at a time when no children were present. The finding of gross negligence against the driver, Perez, was improper.

## B. Durham's Gross Negligence

 An employer may be held grossly negligent on two bases, either as a result of its own conduct or through its responsibility for the conduct of its employee. We have held that there is not legally sufficient evidence to support the finding of Perez's gross negligence, we review only the evidence of-

---

5. "It shall be unlawful to operate any flashing warning signal light on any school bus except when the school bus is being stopped or is stopped on a highway for the purpose of permit-ting school children to board or alight from the school bus." Tex.Rev.Civ.Stat.Ann. art. 6701d, § 131(e) (Vernon Supp.1994).

fered to prove Durham's gross negligence based on its own conduct.

Appellees claim that Perez was improperly trained and supervised. The evidence included Briseno's testimony that Durham managerial employees falsified time records, Briseno's observation that Perez was improperly supervised and trained, that Perez was not yet certified as a TEA approved driver, that Perez was inexperienced, that Perez was not given any training for special pick-ups, and that Durham failed to develop a safe bus stop.

Viewed in the light most favorable to the verdict, Perez may not have had all of the Durham required training. Although Perez had never driven a school bus before his Durham employment, he had a class "A" drivers license and was familiar with operating large vehicles. He was employed only two weeks before Juan was injured. Briseno claims that Perez told him that he did not know where the lights on the bus were and that Perez's training in operating the bus consisted of driving an empty bus around in circle without supervision behind Durham's bus barn.

Briseno testified that he saw unnamed employees falsifying time cards. Briseno testified that he told the general manager that drivers were being improperly trained. Assuming that Perez was improperly trained and did not have much experience driving the bus, there is no causal relationship between that lack of training and Juan's injuries. Perez was not operating the bus at the time Juan was injured.

Appellees claim Perez was improperly supervised because he did not spend enough time observing other drivers and operating with an observer in place. The events of September 23 were not caused by the lack of an observer and would not have been corrected by more hours of observation.

Perez had a temporary TEA permit which appellees also criticize. The TEA materials in evidence do not address the problem of an early pick up or the problems of special pick ups. There is no relationship between Perez's temporary permit and the injury to Juan.

The lack of training for special pick ups is cited as evidence of gross negligence on Durham's part. There is no dispute in the evidence that Perez was not trained for them. Special pick ups occur regularly especially at the beginning of the school year. Failure to train an employee may be gross negligence. The evidence about Perez's instructions that morning is confusing and conflicting. Improper instructions themselves may constitute negligence.

■■■■■ Proof of a failure to enforce or train employees about corporate safety policies may also be evidence of a conscious disregard of the safety of others. *Greater Houston Transp. Co. v. Zrubeck*, 850 S.W.2d 579, 591–92 (Tex.App.—Corpus Christi 1993, writ denied) (bus driver for handicapped persons unfamiliar with proper methods of restraining handicapped in buses, failed to restrain wheel-chair passenger who suffered severe injuries); *see Burk Royalty*, 616 S.W.2d at 924. An employer may be found to be grossly negligent for using inexperienced persons if doing so creates an extreme risk of harm. *Townsend v. Catalina Ambulance Co.*, 857 S.W.2d 791, 797–80 (Tex. App.—Corpus Christi 1993, no writ) (ambulance attendant inexperienced in administering some types of emergency care and patient transported died as a result); *Greater Houston Transp.*, 850 S.W.2d at 591.

Appellees' final theory of gross negligence is that Durham failed to develop a safe bus stop. The evidence is that the area near the mailboxes where the children were to be picked up had good visibility in both directions. However, the evidence is that Perez did not know precisely where he was to pick up the children.

To determine whether Durham's behavior qualifies as gross negligence under *Moriel*, we apply the *Kraus* factors to consider the nature of Durham's wrong. Durham improperly trained and supervised a new bus driver which exposed a nine-year old child to the risk of vehicular traffic. Anytime a child crosses a street there is a risk that he may be seriously injured. Whether he is injured is a function of when he chooses to cross and the behavior of motorists. Traffic is an ordi-

nary risk of life. In the absence of evidence that Perez waved Juan into the street or called him to cross in front of traffic, we hold that mere exposure to traffic does not create the extreme risk of harm necessary to support a finding of exemplary damages.

We hold there is no evidence that either Durham or Perez had an actual awareness that their conduct exposed Juan, or others like him, to an extreme risk of serious injury. *See Moriel,* 879 S.W.2d at 22. We sustain point seven.

## V. FUTURE PAIN AND SUFFERING

■ By points eight and nine appellants complain of the legal and factual sufficiency of the evidence supporting the jury's finding of future pain and suffering.

Two physicians were called to testify. Both testified that Juan's skull fracture had completely healed and would require no future medical treatment.

After his initial hospitalization in September 1991, Juan saw Dr. Pisharodi, his neurosurgeon, on November 5. In discussing that examination, Pisharodi testified that he found no deficits and that Juan had no complaints. His review of an October 1991, skull x-ray revealed that the fracture line was not visible, having completely healed. Juan was scheduled to return in January 1992 but did not. Pisharodi saw him next July 6, 1992, a week before trial.

In July 1992, Juan and his mother complained that Juan had blurred vision and headaches. Dr. Pisharodi suggested that Juan be seen by an ophthalmologist to make certain that Juan didn't need eyeglasses. In the absence of continuing post-accident complaint of headaches Pisharodi did not think that the headaches and blurred vision were related to the September 1991 injury without doing more testing and making certain that the headaches were not related to other complaints. In September 1991, Juan was not considered to have a brain injury because it did not appear that he lost consciousness at the time he was injured although his face and head were badly bruised. Juan has some residual scar tissue under the skin from a healed laceration from his 1991 injuries. The location of that laceration is not clear from the testimony.

Dr. Arredondo, an ear, nose and throat specialist, testified. He saw Juan at the request of plaintiff's counsel on May 29, 1992. He examined Juan's ears, nose, throat, and face and ordered x-rays of his nose and face. He found nothing connected with the automobile collision; the x-rays did not reveal the healed fracture and he recommended no treatment. Arredondo re-examined Juan on June 12, 1992 because Juan was complaining of decreased hearing. He then ordered a hearing test, the results of which were normal, although he found impacted ear wax plugs in both ears. Arredondo examined the x-ray reports from Juan's hospitalization in September 1991 which included a skull x-ray and CAT scan. He did not anticipate any need for future medical care from the September 1991 injuries.

Juan saw Dr. Gustavo Stern in October 1991. Dr. Stern did not testify but his records were admitted as exhibits. Stern ordered the October 1991 x-rays. Stern's records indicate that on October 9 that Juan complained of pain to the right flank and lower back. The doctor's exam revealed that the bruises on Juan's forehead were decreasing, that he had a hematoma on the right side of his forehead, that he had pain on the right side of his chest and the right side of him lumbar area. On October 14, the records reflect that Juan complained of pain to the right flank and that Stern needed some lab results. On October 28, 1991 the notation is that the patient "did not keep appt." No further treatment is noted.

Juan testified about his current physical condition as follows:

Q: Juan have you had any headaches after the accident?

A: No.

Q: Okay. Do you know what a headache is?

A: Yes.

Q: Okay. What happens if you have a headache?

A: Your head starts to hurt.

Q: Now, sometimes does your head hurt?

A: Yes. . . .

Q: Okay. How does your head hurt, to this day, all the way back to the accident sometimes, how does it hurt? Or does it hurt?

A: Yes, it does.

Q: How does it hurt? Can you tell me in your words?

A: It hurts in days, but mostly in the night....

Q: Okay. Does your body hurt any more?

A: The back.

Q: But does it hurt all the time or just sometimes?

A: Sometimes....

Q: When does your back hurt sometimes?

A: When I play and do something.

Q: Now, Juan, but you can still play?

A: Yes.

Q: Okay. Juan before the accident, before you were hit by the car, did your head hurt?

A: No.

Q: Before you were hit with the car, Juan did your back hurt?

A: No.

Juan's mother testified that Juan has recovered but that he complains that his head hurts and that before the collision Juan did not have headaches. Valero admits that the July 1992 visit to Dr. Pisharodi was the first complaint to a physician about Juan's headaches. She testified that the ophthalmology appointment was scheduled during the trial and they did not keep the appointment. Juan takes Tylenol for his headaches.

Viewing the evidence in the light most favorable to the verdict, there is some evidence that Juan's back was injured in September 1991 and has continued to hurt to some degree. We overrule points eight and nine as to the legal sufficiency of the evidence to support the award of future pain and suffering.

6. Briseno was one of 56 witnesses identified in response to a question that asked for the name, address, telephone number, place of employ-

## VI. EVIDENTIARY RULINGS

 By point five, appellants complain of the trial court's admission of the testimony of Robert Briseno, a former Durham employee. Appellants sought to exclude Briseno because he was not timely designated in response to their interrogatories. Appellees argued that because Briseno was timely designated in response to co-defendant Galicia's interrogatories, although not in response to Durham's and Perez's, he was properly allowed to testify.

Durham and Perez propounded two sets of written discovery to the plaintiffs. Both sets were answered and supplemented a number of times. The initial discovery inquired as to the identity of eyewitnesses to the collision, expert witnesses, and other witnesses with knowledge relevant to the subject matter of the lawsuit. The second set of interrogatories requested identification of persons with knowledge of Perez's improper supervision and training. Briseno was never identified in responses to these interrogatories.

Galicia sent written discovery to plaintiffs on June 3, 1992, asking for the identity of witnesses with knowledge of relevant facts. Briseno was identified by name only, no address or phone number, with the notation "He will testify as to any knowledge he may have of the alleged accident."[6] This response was made on June 29, 1992, shortly before trial. The trial judge allowed Briseno to testify over appellants objection.

 We review the trial court's decision to admit Briseno's testimony for an abuse of discretion. See *Lindsey v. O'Neill*, 689 S.W.2d 400, 402–03 (Tex.1985) (per curiam).

Rule 166b provides that a party has a duty to supplement his responses if the answer which was complete when made is no longer complete and that failure to supplement is misleading. TEX.R.CIV.P. 166b(6). The sanction for failure to respond or supplement responses is automatic: the witness not disclosed will not be allowed to testify unless the court finds good cause exists to require admission. TEX.R.CIV.P. 215(5).

ment, present whereabouts of persons with knowledge of relevant facts and a "brief description of the facts known by each witness."

Plaintiffs did not comply with their obligation to disclose the witness in response to Durham and Perez's request. Briseno should have been excluded unless good cause was shown or some other exception existed. *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex.1992). The trial court specifically declined to rule that good cause was shown but refused to exclude Briseno because he was timely designated in response to Galicia's interrogatories.

Appellees contend that the trial court did not err in admitting Briseno's testimony relying on *Ticor Title Ins. Co. v. Lacy*, 803 S.W.2d 265, 266 (Tex.1991) (per curiam) and *Smith v. Christley*, 755 S.W.2d 525 (Tex. App.—Houston [14th Dist.] 1988, writ denied). Each is distinguishable.

In *Ticor*, the plaintiff sued two defendants. The defendant Sullivan objected to the plaintiff's witness who had not been disclosed in response to defendant Ticor's interrogatories. The defendant Sullivan had not sought such discovery on his own.

In *Smith*, the circumstances are similar. The party seeking to exclude the testimony never sent interrogatories to the party whose witness it was attempting to exclude. The trial court excluded the testimony because "[a] party must be able to rely on the interrogatories and answers of other parties in the same suit." *Smith*, 755 S.W.2d at 530.

Durham and Perez propounded very specific interrogatories to the plaintiff requiring Briseno's designation, as well his address and telephone number, more than thirty days before trial.[7] Unlike the defendants in *Ticor* and *Smith*, Durham and Perez did not rely on Galicia's discovery to the plaintiff.

■ Briseno's address was not disclosed, although requested. Failure to supplement a witness's address when it changes is grounds alone for exclusion. *See Morrow v. H.E.B., Inc.*, 714 S.W.2d 297 (Tex.1986).

■ The purpose of discovery is to promote responsible assessment of settlement and prevent trial by ambush. *Alvarado*, 830 S.W.2d at 914. That purpose and Rules 166b and 215(5) are not served by the application of the *Ticor* and *Smith* exception in this case. The general rule is that a witness whose identity is not properly disclosed may not testify. In light of appellees' complete failure to supplement their answers to Durham's interrogatories disclosing the witness Briseno, the trial judge abused his discretion in allowing him to testify.

Finding error, we conduct a harm analysis. For the error to require reversal it must be "such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment." Tex.R.App.P. 81(b)(1). Briseno's testimony was the only evidence of falsification of time records and the only direct evidence of improper training. The error was harmful. *See K–Mart v. Grebe*, 787 S.W.2d 122, 127 (Tex.App.—Corpus Christi 1990, writ denied). We sustain point of error five.

## VII. REFUSED DEFINITIONS AND INSTRUCTIONS

By points ten and eleven, appellants complain that the trial court erred in rejecting their requested jury instruction about the proper use of the flashing yellow lights on a school bus during loading and unloading and in failing to include their requested definition of mental anguish.

Appellants requested the following instruction on negligence and flashing lights:

"Negligence" means failure to use ordinary care, that is failing to do that which a person of ordinary prudence whole have done under the same or similar circumstances or doing that which a person or ordinary prudence would not have done under the same or similar circumstances.

---

7. Appellee also relies on *Ward v. O'Connor*, 816 S.W.2d 446 (Tex.App.—San Antonio 1991, no writ). In *Ward*, the plaintiffs supplemented their discovery responses to one defendant six months prior to trial and identified witnesses, experts and exhibits. That document was marked "SUPPLEMENTAL TO ALL OTHER DISCOVERY." Those facts are significantly different than those before us. The record does not reflect that the discovery responses to Galicia were so marked and those answers were filed June 29 before a July 13 trial date rather than six months prior to trial.

In this connection, I instruct you that un-der Texas law, it is unlawful to operate any flashing warning signal light on any school bus except when the school bus is being stopped or is stopped on a highway for the purpose of permitting school children to board or alight from the school bus.

The trial judge rejected this combined definition/instruction. Defendants also objected to the lack of the instruction. *See Texas Cookie Co. v. Hendricks & Peralta*, 747 S.W.2d 873, 878 (Tex.App.—Corpus Christi 1988, writ denied).

The trial court is required to submit instructions and definitions as are proper to enable the jury to reach a verdict. TEX. R.CIV.P. 277. To obtain reversal of a judgment on the court's failure to submit an instruction or definition, the requesting party must have tendered a substantially correct definition or instruction in writing to the trial court and obtained a ruling on that tender. TEX.R.CIV.P. 278. A trial judge has considerable discretion to accept or reject instructions and definitions. *Gonzalez v. Texas Dep't of Human Resources*, 581 S.W.2d 522, 527 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

The instruction on the proper use of the loading lights tracked the statute. One significant issue was the driver's negligence in failing to activate the bus's flashing warning lights. The proposed instruction would have aided the jury in determining whether the driver was negligent in failing to use the lights. Point ten is sustained.

Appellant also tendered the following definition of mental anguish:

"Mental anguish" means a relatively high degree of mental pain and distress; it is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these, and it includes mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation of such level as to render a person incapable of dealing with everyday activities.

Question No. 3 in the charge asked the jury to award money damages to Juan for physi-cal pain and mental anguish in the past and in the future. Question No. 4 asked the jury to award money damages to Cecilia Valero for mental anguish in the past. The jury's finding as to Valero is not challenged.

The requested instruction is inappropriate. Here mental anguish is combined with physical pain resulting from an objective physical injury. Mental anguish may itself result from physical injury. *See Pentes Design, Inc. v. Perez*, 840 S.W.2d 75, 80 (Tex.App.—Corpus Christi 1992, writ denied). A jury may infer pain and mental anguish from the fact of physical injury without any specific testimony thereto. *Id.* No special definition of mental anguish is necessary when the mental anguish is that accompanied by physical injury and physical pain. We overrule point eleven.

The judgment is REVERSED and RENDERED that the plaintiffs recover no exemplary damages and REVERSED and REMANDED for a new trial on the negligence of Durham and Perez and the resulting damages.

NOAH KENNEDY, Former J., not participating.