Opinion issued May 24, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00666-CV

———————————

J. Homer Garza and arturo salomon, Appellants

V.

c. Paul
Evans, Appellee



 



 

On Appeal from the 133rd Judicial District Court

Harris County, Texas



Trial Court Case No. 2008-47756

 



 

MEMORANDUM OPINION

          Appellants,
J. Homer Garza and Arturo Salomon, bring this appeal challenging the trial
court’s judgment, entered after a bench trial, in favor of appellee, C. Paul
Evans, in Evans’s suit in intervention[1] for breach of a guaranty
agreement.  In three issues, Garza and
Salomon contend that the trial court erred in enforcing the guaranty agreement.

          We affirm.   

Background

           In their original petition, Garza and Salomon asserted
against TBA Construction, L.L.C. (“TBA Construction”) and its owners Mark
Adkinson, Mary Adkinson, and Thomas Dunn their claims for breach of contract,
fraud, fraudulent inducement, unfair competition, and violation of a
non-competition agreement.  Evans filed a
suit in intervention against Garza, Salomon, TBA Construction, and Mark
Adkinson, alleging that TBA Construction had defaulted on a promissory note in
the amount of $200,000 and Garza, Salomon, and Adkinson had defaulted on their
guaranty of payment under the promissory note. 
Specifically, Evans alleged that TBA Construction had delivered him a
promissory note; Garza, Salomon, and Adkinson individually guaranteed the note
later the same year; TBA Construction defaulted on the note; and Adkinson,
Garza, and Salomon had refused to pay the amount due on the note as provided in
the guaranty agreement.  

The trial court entered a default
judgment on Evans’s claim against TBA Construction in the amount of $235.195.26.  At the beginning of trial, Garza and Salomon
non-suited their claims against TBA Construction.

          Evans
testified that in March 2006, he discussed with Dunn the possibility of loaning
money to TBA Construction in order to “fund the company,” and he and Dunn
eventually agreed that Evans would loan TBA Construction $200,000.  Evans received a promissory note from TBA
Construction, signed by Evans and Dunn, which provided for semi-annual
repayments of interest beginning in September 15, 2006 and the total amount
coming due on March 15, 2011.  

In October 2006, Evans spoke with
Mark Adkinson, who informed him that “the company had been purchased by another
firm.”  Adkinson asked if Evans “could
wait for 90 days” before receiving total repayment of the note, to which Evans
consented.  “[A]t some point” later,
Evans received a document entitled, “Specific Guaranty Agreement,” signed by Garza,
Salomon, and Adkinson, which provided,

FOR VALUE received, the undersigned, whether one or
more, hereinafter “Undersigned” or “Guarantor,” jointly, severally, and
unconditionally guarantee the full and punctual payment when due of the
following described indebtedness of $200,000, “Borrower,” whether one or more,
to C. PAUL EVANS, “Lending Party”:

 

One certain promissory note in the original
principal amount of $200,000.00, dated March 15, 2006, executed by Borrower and
payable to the order of Lending Party . . . together with all renewals and
extensions thereof, even though represented by new instruments and/or occurring
after the death of any Borrower or Undersigned, together with all interest,
attorney fees and/or court costs for which Borrower may become liable in
connection therewith. . . .

 

The Undersigned waive notice of acceptance of this
guaranty and of any liability to which it applies or may apply, and waive
presentment and demand for payment thereof, notice of dishonor or nonpayment
thereof, collection or instigation of suit or any other action by Lending Party
in collection thereof including any notice of default in payment thereof or
other notice to, or demand of payment therefor on, any party.

          

          Evans
received a payment of interest in September 2006 and a second payment of
interest on March 13, 2007, but he received no further payment installments.  On February 8, 2008, Evans sent Garza,
Salomon, and Adkinson a “Notice of Default and Right to Cure Default” and requested
payment of the amount due “under the Specific Guaranty Agreement,” but he
received no response.  At the time of
trial, Evans calculated that $235,713 remained due on the note.

          On
cross-examination, Evans explained that he first knew of the guaranty when he
received it “[s]ometime after the guaranty was signed.”  He did not exchange anything in return for
the guaranty, loan any more money to the company, or change the terms of the
loan.  

          Dunn
testified that he and Adkinson started TBA Construction in 2001.  Dunn contacted Evans about making a loan to
TBA Construction because Evans was “a close friend . . . and he knew that [TBA
Construction was] having some financial issues.”  Even after Evans’s loan, however, TBA
Construction was “still struggling,” so Dunn approached Adkinson about
“shut[ting] the companies down” and repaying their outstanding debts to Evans
and TBA Construction’s equipment suppliers. 
Dunn and Adkinson also discussed the possibility of selling the company
to Garza and Salomon.  Dunn explained
that, when they met with Garza and Salomon, repaying the loan to Evans was “the
single most important item to be dealt with,” and he refused to sell the
company without Evans’s consent and a “guarantee of payment” to Evans.  Garza, Salomon, and Adkinson then signed the
“Specific Guaranty Agreement,” which was incorporated into the “Agreement of
Sale of Company Assets” (“Agreement of Sale”), making Garza and Salomon general
partners in TBA Construction along with Adkinson.  The Agreement of Sale included the following
provision,

For and in consideration of
the transfer of the businesses’ assets of the Companies, the Buyers agree to
guarantee full payment to Paul Evans in the sum of $200,000.00 . . . . 

 

Under Article III of the
Agreement of Sale, entitled “Conditions Precedent to Obligation of Parties to
Close,” the contract provided,

3.01 The obligations of the
Sellers (“The Companies and their Owners”) under this Agreement shall be
subject to the receipt by Sellers of the following documents, all of which
shall be fully executed:

 

1.  An Agreement executed by Mark D. Adkinson, J.
Homer Garza, and Arturo Salomon guaranteeing full payment of a note in the sum
of $200,000.00 to Paul Evan[s] in Addendum “H”, attached hereto and made part
of this Agreement by incorporation.

 

Dunn explained that the
existence of the guaranty agreement “was the only way [he] was going to sign”
the Agreement of Sale.  Dunn did not
receive “anything out of the transaction” other than the guaranty for Evans.

          Adkinson testified that he was a vice president and
director of TBA Construction.  He first
discussed a potential sale of TBA Construction with Garza, his corporate
attorney, in October 2006.  Because Dunn
would not consent to selling the company unless he was “sure [Evans] got paid,”
Garza “indicated for [Adkinson] . . . to tell [Evans] that he would be paid.”  Adkinson contacted Evans to inform him of the
potential sale and to ensure repayment of the loan, and Evans replied that he
would “go along with the deal.”  

          Adkinson, Garza, and Salomon formed a new company, AGS
Investments, Ltd. (“AGS Investments”), through which it acquired and then
operated TBA Construction.  AGS
Investments continued to work on TBA Construction’s ongoing projects and
received payment from their customers. 
Adkinson eventually “departed from the company” because he did not “get
along” with Garza and was not “satisfied with what [he was] getting paid.”  

          Salomon testified that after acquiring TBA Construction, he
wired large sums of money to the company. 
He was not involved in negotiating the Agreement of Sale, did not “read
all the details” of the Agreement of Sale, and “relied” on Garza for everything
“because he was taking care of the agreement.” 
Salomon considered himself only an investor in the project, and his
understanding of the acquisition was that he, Garza, and Adkinson would “buy
the assets, the machines and the things, everything clear so we can work with
that.”  However, shortly after the
acquisition, “everything was foreclosed [on] and taken away” because Salomon
was not aware that “there were liens on everything.”    

          Garza testified that Adkinson first approached him about
obtaining “some assistance” with TBA Construction’s “financial condition.”  After agreeing to acquire TBA Construction’s
assets, Garza explained that “most” of the Agreement of Sale was drafted “at
Mr. Adkinson’s and Mr. Dunn’s office.” 
Garza then identified several deposits made to bank accounts set up by
Adkinson, Salomon, and Garza from projects inherited from TBA
Construction.  Garza also identified
several payments from those bank accounts to debts that were owed by TBA
Construction.  

          On cross-examination, Garza explained that at first he
would not sign a guaranty agreement for the $200,000 note to Evans.  However, Dunn explained that “there was
$361,000 estimated profits on five contracts that [TBA Construction] had” and
the note could be paid from those profits. 
Garza stated that he had never spoken to Evans prior to signing the
guaranty agreement and did not receive any benefit from Evans, but rather the
agreement “was between [Dunn] and ourselves.” 
Garza did receive a call from Evans in March 2007, when Evans told Garza
that “[h]e had received an interest payment” and “he wanted to know why [they]
were not paying him the whole amount.” 
Garza responded that he was “looking at rescinding the contract because
the equipment” was not free of all liens and he and Salomon “had not gotten [their]
contractors assigned.”  He explained that
any payments he had received were due to “new business” and he received “[n]o
money at all” from the alleged $361,000 in estimated profits from TBA
Construction’s ongoing projects.  

          The trial court entered a final judgment that Evans is
entitled to recover from Garza, Salomon, and Adkinson, jointly and severally,
in the amount of $257,261.06.  In its
findings of fact, the court found that “[a]s part of the consideration given
for the assets of the businesses . . . Garza, Salomon and Adkinson,
individually, agreed to jointly, severally and unconditionally guaranty full
and punctual payment when due of the promissory note owed by TBA Construction
to Evans” and “Evans is the lawful owner and holder of the promissory note and
guaranty.”  The court also found that
“[t]here was consideration for the guaranty” because “the primary obligor on
the debt guaranteed, TBA Construction” and “the promisors, Garza, Salomon, and
Adkinson, received benefit.”  Under its
conclusions of law, the trial court found that enforcement of the guaranty was
not barred by a failure or lack of consideration.  

Standard of Review

In an appeal of
a judgment rendered after a bench trial, the trial court’s findings of fact
have the same weight as a jury’s verdict, and we review the legal sufficiency
of the evidence used to support them just as we would review a jury’s findings.
 Catalina v. Blasdel, 881 S.W.2d 295,
297 (Tex. 1994); Daniel v. Falcon Interest Realty Corp., 190 S.W.3d
177, 184 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  In conducting a legal-sufficiency review of
the evidence, a court must consider all of the evidence in the light most
favorable to the verdict and indulge every reasonable inference that would
support it.  City of Keller v. Wilson, 168 S.W.3d
802, 822 (Tex. 2005).  The
term “inference” means, 

In the law of evidence, a truth or
proposition drawn from another which is supposed or admitted to be true. A
process of reasoning by which a fact or proposition sought to be established is
deduced as a logical consequence from other facts, or a state of facts, already
proved. . . .

 

Marshall Field Stores, Inc. v. Gardiner,
859 S.W.2d 391, 400 (Tex. App.—Houston [1st Dist.] 1993, writ dism’d w.o.j.)
(citing Black’s Law Dictionary
700 (5th ed. 1979)).  For a fact-finder
to infer a fact, “it must be able to deduce that fact as a logical consequence
from other proven facts.”  Id. 
In determining whether legally sufficient evidence supports
the finding under review, we must consider evidence favorable to the finding if
a reasonable fact-finder could consider it, and disregard evidence contrary to
the finding unless a reasonable fact-finder could not disregard it.  City of
Keller, 168 S.W.3d at 827; Brown v. Brown, 236 S.W.3d
343, 348 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

          We review a
trial court’s conclusions of law de novo,
and we will uphold the conclusions if the judgment can be sustained on any
legal theory supported by the evidence.  BMC
Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 794 (Tex. 2002); In re Moers, 104 S.W.3d
609, 611 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Although a trial court’s
conclusions of law may not be challenged for factual sufficiency, we may review
the legal conclusions drawn from the facts to determine whether the conclusions
are correct.  BMC Software Belgium,
N.V.,
83 S.W.3d at 794.  If we determine that a
conclusion of law is erroneous, but the trial court nevertheless rendered the
proper judgment, the error does not require reversal.  Id.; Vaughn v. DAP Fin. Servs., 982 S.W.2d
1, 6 (Tex. App.—Houston [1st Dist.] 1997, no pet.).  Finally, we note that the trial court acts as
fact-finder in a bench trial and is the sole judge of the credibility of
witnesses.  See Murff v. Murff, 615 S.W.2d
696, 700 (Tex. 1981); HTS Servs., Inc. v. Hallwood Realty Partners, L.P., 190 S.W.3d
108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

 

Breach of Guaranty Agreement

          In their first issue, Garza
and Salomon argue that the trial court “erred in finding Evans was entitled to
enforce the guaranty agreement because there was no meeting of the minds to
create a valid guaranty agreement.”  In
their second issue, Garza and Salomon argue that “Evans was not the lawful
owner and holder of the guaranty and is, therefore, not entitled to enforce the
guaranty.”  In their third issue, Garza
and Salomon assert that “[t]here was no consideration for the guaranty.”  

Meeting of the Minds

          Garza
and Salomon first argue that “there was no meeting of the minds to create a
valid guaranty agreement” because “Evans (the creditor) was not even aware of
the existence of the guaranty until sometime after Garza, Salomon, and Adkinson
(the guarantors) entered into the guaranty with TBA Construction (the primary
debtor).”  Thus, according to Garza and
Salomon, “Evans is not entitled to enforce the guaranty.”  

          The Texas Business and Commerce Code
provides:

(a)     A promise or
agreement described in Subsection (b) of this section is not enforceable unless
the promise or agreement, or a memorandum of it, is

 

(1)     in writing; and

 

(2)     signed by the
person to be charged with the promise or agreement or by someone lawfully
authorized to sign for him.

 

Tex. Bus. & Com. Code Ann.
§ 26.01(a) (Vernon 2009).  Subsection (b)
applies to “a promise by one person to answer for the debt, default, or
miscarriage of another person.”  Id. § 26.01(b)(2).  The statute requires “a written memorandum
which is complete within itself in every material detail, and which contains
all of the essential elements of the agreement, so that the contract can be
ascertained from the writings without resorting to oral testimony.”  Cohen v. McCutchin, 565 S.W.2d
230, 232 (Tex. 1978).  The essential terms of a guaranty agreement are (1)
the parties involved, (2) a manifestation of intent to guaranty the obligation,
and (3) a description of the obligation being guaranteed. Material P’Ships, Inc. v. Ventura, 102 S.W.3d 252, 261 (Tex.
App.—Houston [14th Dist.] 2003, pet. denied); Park Creek Assocs., Ltd. v. Walker, 754 S.W.2d
426, 429 (Tex. App.—Dallas 1988, writ denied). 
Separate instruments or contracts executed at the same time, for the
same purpose, and in the course of the same transaction are to be considered as
one instrument and are to be read and construed together.  Jones
v. Kelley, 614 S.W.2d 95, 98 (Tex. 1981); North v. Lawrence, 841 S.W.2d 540, 542 (Tex. App.—Houston [1st
Dist.] 1992, no writ).

          Here, the “Specific Guaranty
Agreement” provides, in pertinent part,

[T]he
undersigned, whether one or more, hereinafter “Undersigned” or “Guarantor,”
jointly, severally, and unconditionally guarantee the full and punctual payment
when due of the following described indebtedness of $200,000.00, “Borrower,”
whether one or more, to C. Paul Evans, “Lending Party”:

 

One
certain promissory note in the original principal amount of $200,000.00, dated
March 15, 2006, executed by Borrower and payable to the order of Lending Party
. . . .

 

Adkinson,
Garza, and Salomon each signed the guaranty agreement next to the designation,
“Guarantor.”  They thus clearly indicated
an intent to guaranty the underlying promissory note in the guaranty agreement,
which described the obligation being guaranteed and identified Evans as the
“Lending Party” and Adkinson, Garza, and Salomon as “Guarantors.”  Although the guaranty agreement does not
specifically name TBA Construction as “Borrower,” it does specifically
reference the March 15, 2006 promissory note in the amount of $200,000.00,
which is signed by “TBA Construction, Inc.” as “Debtor.”  Furthermore, we construe the guaranty
agreement together with the Agreement of Sale, which was executed on the same
date as the guaranty agreement and incorporates the guaranty agreement.  See
Jones, 614 S.W.2d at 98.  The
Agreement of Sale includes the following provision, under a section entitled,
“Conditions Precedent to Obligation of Parties to Close”:

The
obligations of the Sellers (“The Companies and their Owners”) under this
Agreement shall be subject to the receipt by Sellers of the following
documents, all of which shall be fully executed:

 

1. 
An agreement executed by Mark D. Adkinson, J. Homer Garza and Arturo
Salomon guaranteeing fully payment of a note in the sum of $200,000.00 to Paul
Evan[s] in Addendum “H,” attached hereto and made part of this Agreement by
incorporation.

 

Thus,
the promissory note itself, which identified TBA Construction as the primary
debtor, was incorporated into the Agreement of Sale along with the guaranty
agreement.  Construed together, these
documents demonstrate the essential terms of a guaranty agreement.  See Material
P’ships, 102 S.W.3d at 261.

          Garza and Salomon nevertheless argue
that Evans was required to prove a “meeting of the minds” with respect to Evans
because “to have a valid guaranty, there must be a clear demonstration of a
meeting of the minds of all three essential parties to the agreement.”  In support of this proposition, Garza and
Salomon rely on Sacks v. Haden, 266
S.W.3d 447 (Tex. 2008) and Copeland v.
Alsobrook, 3 S.W.3d 598 (Tex App.—San Antonio 1999, pet. denied).  In Sacks,
the Texas Supreme Court considered whether there was a “meeting of the minds”
in the execution of an attorney’s fee agreement where the parties had an oral
agreement regarding the “maximum fee” that could be charged.  Sacks,
266 S.W.3d at 448–50.  Sacks did not address the “meeting of
the minds” for a guaranty agreement. 
Likewise, in Copeland, the San
Antonio Court of Appeals addressed the issue of whether there was a “meeting of
the minds” regarding an oral contract for the parties to “work together to obtain
the proceeds” of a decedent’s life insurance policy.  Copeland,
3 S.W.3d at 603–04.  Copeland similarly does not involve the “meeting of the minds” for
a guaranty agreement, and Garza and Salomon fail to cite any authority
requiring a plaintiff to show a “meeting of the minds” between all three
parties to a guaranty agreement. 
Accordingly, we hold that the trial court did not err in concluding that
Evans was not precluded from enforcing the guaranty agreement on the ground
that he did not show a “meeting of the minds.” 

          We overrule Garza and Salomon’s first
issue.

Status
as Owner and Holder of the Guaranty

          In their second issue, Garza and
Salomon argue that the trial court erred in concluding that Evans was the
“lawful owner and holder of the promissory note and guaranty” because “he did
not know of the guaranty until long after Garza, Salomon, and Adkinson signed
it” and “there is no evidence establishing that Evans ever received the
original of the guaranty.”  

          To recover against a guarantor of a note,
the plaintiff must show (1) the existence of the note and guaranty, (2) the
debtor signed the guaranty, (3) the plaintiff legally owns or holds the
guaranty, and (4) a certain balance remains due and owing.  Vaughn,
982 S.W.2d at 4.

          Here, Evans testified that he received
the originals of both the guaranty and the promissory note although, at trial,
he could only produce copies of the documents. 
The guaranty was signed by Garza, Salomon, and Adkinson, and Evans
testified that he was the owner of the rights under the guaranty.  Furthermore, the plain language of the
guaranty gives Evans the right to collect under the guaranty, stating that the
undersigned “unconditionally guarantee the full and punctual payment when due”
under the promissory note “to C. PAUL EVANS, ‘Lending Party,’” the “Lending
Party may, at his option . . . extend the time of payment,” and “[p]ayments of
all amounts hereunder shall be made to C. Paul Evans.”  The guaranty agreement further states,

This
Agreement is for the benefit of Lending Party, and for such other persons as
may from time to time become or be the holders of any indebtedness
guaranteed.  This Agreement shall be
transferrable and negotiable, with the same force and effect and to the same
extent as such indebtedness may be transferrable, it being understood that upon
the assignment of transfer by Lending Party of any indebtedness guaranteed, the
legal holder of such indebtedness shall have all of the rights granted to Lending Party under this guaranty.

 

(Emphasis
added).  Thus, the guaranty agreement
itself grants Evans rights as the owner and holder of the guaranty.

          Garza and Salomon argue that, despite
the above language, without producing an original of the guaranty agreement,
“Evans cannot establish an unbroken chain of title for the guaranty.”  In support of this proposition, Garza and
Salomon rely on Ashcraft v. Lookadoo,
952 S.W.2d 907 (Tex. App.—Dallas 1997, pet. denied).  In Ashcraft,
the plaintiff purchased a promissory note from a company that had been placed
in receivership.  Id. at 911.  The plaintiff argued
that, despite the fact that the purchase agreement included only the promissory
note, he nevertheless also acquired an underlying guaranty because “the
assignment of a note automatically operates as an assignment of any separate
guaranties that secure the note.”  Id. at 911.  The Dallas Court of Appeals held that the
plain language of the purchase agreement included only the promissory note and,
therefore, the plaintiff did not acquire the underlying guaranty through his
purchase.  Id. at 912–13.  The court
further held that, although the plaintiff eventually obtained a copy of the
guaranty, he did not establish that he obtained a copy from the guaranty’s
owners or he was assigned the rights under the guaranty by the guaranty’s
owners.  Id. at 913.   

Here, by contrast, the terms of the guaranty agreement grant
the rights under the agreement to Evans, and there is no evidence that Evans
transferred or assigned the rights under the guaranty.  Furthermore, Evans testified that he received
the original of the guaranty, he was the owner and holder of the guaranty, and the
copy he produced at trial was a true and accurate copy of the original.  This testimony was sufficient to prove his
status as the legal owner and holder of the guaranty.  See
Zarges v. Bevan, 652 S.W.2d 368, 369 (Tex. 1983) (holding that photocopy of
note, together with affidavit stating that copy was “true and correct” copy of
original, was sufficient to show status as owner and holder of note in summary
judgment);  Life Ins. Co. of Va. v. Gar-Dal, Inc., 570
S.W.2d 378, 381 (Tex. 1978) (holding that copy of note and affidavit that
plaintiff was “sole owner and holder” of note was sufficient to prove that
plaintiff “was the owner, holder, and in possession of the note”); Vaughn, 982 S.W.2d at 5 (citing Hanks v. NCNB Tex. Nat’l Bank, 815
S.W.2d 763, 765 (Tex. App.—Eastland 1991, no writ)) (holding that where bank
officer stated copies of note and guaranty were “true and genuine” and
“confirmed that the bank was the legal holder and owner” and “sole party to
enforce” the note and guaranty, evidence was sufficient “to prove legal holder
and ownership status”)).  Accordingly, we
hold that the trial could have reasonably concluded that Evans is the “lawful
owner and holder” of the guaranty.

          We overrule Garza and Salomon’s second
issue.

Consideration

          In their third issue, Garza and
Salomon argue that because “there was no consideration for the guaranty,” Evans
should not be “allowed to recover under the guaranty.”  Garza and Salomon assert that “as a matter of
law, there was no consideration for the guaranty” and “TBA Construction did not
receive an additional benefit from the signing of the guaranty.”  They further assert that “whether Garza,
Salomon, and Adkinson received a benefit from signing the guaranty is not a
factor when determining whether there is consideration to establish a valid
guaranty.”

          Like any contract, a guaranty
agreement must be supported by consideration. Hargis v. Radio Corp. of Am.,
Elec. Components, 539 S.W.2d 230, 232 (Tex. Civ. App.—Austin 1976, no
writ).  Consideration “consists of either
a benefit to the promisor or a detriment to the promisee.”  Ventura,
102 S.W.3d at 262.  “The detriment must
induce the making of the promise, and the promise must induce the incurring of
the detriment.”  Roark v. Stallworth
Oil & Gas, Inc., 813 S.W.2d 492, 496 (Tex. 1991) (citations omitted).  Consideration for a guaranty agreement is
usually either the sufferance of a detriment by the creditor or a benefit
conferred on the primary debtor.  Hargis, 539 S.W.2d at 232.

When, as in the present case, the parties enter into a
guaranty independent of the transaction that initially caused an obligation,
consideration independent of the obligation must support the guaranty.  Gooch v. Am. Sling Co., Inc., 902 S.W.2d
181, 185 (Tex. App.—Fort Worth 1995, no writ).  The consideration need not pass to the
guarantor; consideration is sufficient if the primary debtor receives some
benefit.  Beltran v. Groos Bank, N.A., 755 S.W.2d
944, 948 (Tex. App.—San Antonio 1988, no writ); see Smith v. Christley, 755 S.W.2d
525, 532 (Tex. App.—Houston [14th Dist.] 1988, writ denied), disapproved on
other grounds by Van Allen v. Blackledge,
35 S.W.3d 61, 65 n.3 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).  Consideration may be given either by the
promisee or by some other person to either the promisor or some other
person.  Frazer v. Tex. Farm Bureau Mut. Inc. Co., 4 S.W.3d 819, 824 (Tex.
App.—Houston [1st Dist.] 1999, no pet.); Hovas
v. O’Brien, 654 S.W.2d 801, 802–03 (Tex. App.—Houston [14th Dist.] 1983,
writ ref’d n.r.e.).

Garza and Salomon first assert that “there was no
consideration distinct from that of the primary debt.”  However, the Agreement of Sale, which was
executed at the same time as the guaranty agreement and incorporated the
guaranty agreement, stated,

For and in
consideration of the transfer of the businesses’ assets of the Companies,
the Buyers agree to guarantee full payment to [Evans] in the sum of $200,000.00
. . . .

 

(Emphasis
added.)  Thus, by the plain terms of the
Agreement of Sale, Garza and Salomon received TBA Construction’s assets as
consideration in return for their individual guaranties of Evans’s note.  The execution of the guaranty agreement was
listed as a “condition precedent” to closing the sale, and the buyers were required
to deliver the guaranty agreement to the sellers on the closing date.  Despite Garza and Salomon’s
assertion that they received no “consideration distinct
from the promise to pay the primary debt,” the Agreement of Sale unambiguously
states that the purchase of TBA Construction was consummated in consideration
for the guaranty agreement.  Garza and
Salomon, the promisors under the guaranty agreement, received a benefit from
signing the guaranty and that benefit induced the signing of the guaranty.  See
Roark, 813 S.W.2d at 496.  Accordingly,
we hold that the trial court could have reasonably concluded that Garza,
Salomon, and Adkinson received a benefit from the guaranty agreement.

          Garza and Salomon further argue that
whether they received a benefit from signing the guaranty is “not a factor when
determining whether there is consideration to establish a valid guaranty”
because “it is not necessary that any consideration pass directly to the
guarantor.”  While “[c]onsideration for
guaranty agreements usually consists
of a detriment to the creditor or a benefit conferred on the primary debtor,”
this does not preclude consideration consisting of a benefit conferred on the
guarantor.  Cf. Hargis, 539 S.W. at 231 (emphasis added).  Consideration may consist of “either a
benefit to the promisor or a detriment to the promisee.”  Ventura,
102 S.W.3d at 262.  As promisors, the
benefit conferred to Garza, Salomon, and Adkinson was sufficient to support a
finding that enforcement of the guaranty was not barred by failure or lack of
consideration.  See Universal Metals & Machinery v. Bohart, 539 S.W.2d 874,
877–88 (Tex. 1976) (holding that corporate owners, as individual guarantors of
corporation’s debt, received consideration for guaranty where debtors continued
to provide corporation machinery); Simpson
v. MBank Dallas, N.A., 724 S.W.2d 102, 107 (Tex. App.—Dallas 1987, writ
ref’d n.r.e.) (holding that guarantor received benefit, and thus consideration,
where creditor acquiesced to sale of company to guarantors); see also Frazer, 4 S.W.3d at 824
(“Consideration may be given by either the promisee or by some other person to
either the promisor or some other person.”). 


          Although the benefit conferred on
Garza, Salomon, and Adkinson is sufficient to support a finding of
consideration, there is also evidence that TBA Construction, as primary
debtors, received a benefit.  As part of
the Agreement of Sale, TBA Construction received a “[c]ash injection of
$285,000.00 by [Salomon].”  And, as
stated above, the guaranty agreement was a “condition precedent” to
consummating the Agreement of Sale and was incorporated therein.  Accordingly, we hold that the trial court did
not err in concluding that TBA Construction received a benefit from the
guaranty agreement and enforcement of the guaranty was not barred by failure or
lack of consideration.

          We overrule Garza and Salomon’s third
issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                    Terry Jennings

                                                                   Justice 

 

Panel
consists of Justices Jennings, Massengale, and Huddle.











[1]           See
Tex. R. Civ. P. 60.